Paul SMITH, Jr., Plaintiff,

v.

ITT STANDARD and United Steel Workers of America, Defendants.

92–CV–234S.

United States District Court, W.D. New York.

July 21, 1993.

William D. Scott, Buffalo, NY, for plaintiff.

Hodgson, Russ, Andrews, Woods & Goodyear (Anne S. Simet, of counsel), Buffalo, NY, for defendant ITT Standard.

Law Offices of E. Joseph Giroux, Jr. (E. Joseph Giroux, Jr., of counsel), Buffalo, NY, for defendant United Steelworkers of America.

## DECISION and ORDER

FOSCHIO, United States Magistrate Judge.

### JURISDICTION

The parties executed a consent to proceed before the undersigned on October 22, 1992. The matter is presently before the court pursuant to Defendants' motion for summary judgment under Fed.R.Civ.P 56(b).

### BACKGROUND

Plaintiff, Paul Smith, Jr., a fourteen-year employee of Defendant ITT Standard ("ITT") and a member of United Steel Workers of America Local No. 897, AFL–CIO ("the Union"), until his termination in 1991, filed a complaint on April 3, 1992, alleging wrongful discharge under the terms of the collective bargaining agreement against ITT, and a violation of Section 301 of the National Labor Relations Act (29 U.S.C. § 185(a)) against the Union for violation of its duty of fair representation. ITT and the Union answered on April 29, 1992 and April 27, 1992, respectively, asserting that the complaint failed to state a claim as to either defendant, and requesting dismissal, costs and attorneys fees.

Following discovery, the Union filed a summary judgment motion on December 30, 1992. ITT filed a summary judgment motion

on January 4, 1993. Smith's Affidavit in Opposition was filed February 12, 1993, and oral argument was held March 4, 1993 with decision reserved.

For the reasons which follow, ITT's motion is DENIED, and the Union's Motion is GRANTED, in part and DENIED, in part.

## FACTS

ITT, a designer and manufacturer of shell and tube heat exchangers, employs approximately 350 employees. *See,* ITT Statement of Undisputed Facts, filed January 4, 1993, at p. 2. Smith was first hired by ITT in 1977 as a grinder to work on heat exchangers. At the time of his discharge on October 11, 1991, he was an assembler earning $12.14 an hour. *See,* Complaint, filed April 3, 1992, at ¶¶ 8 and 9. During the period of his employment with ITT, Smith had been less than a model employee, accumulating numerous disciplinary warnings and suspensions. *See,* Exhibit 4 to Affidavit of Will Shine in Support of ITT's Motion for Summary Judgment, filed January 14, 1993. The Union, of which Smith was a member from his initial employment until his discharge, is the exclusive bargaining agent for ITT production and maintenance workers. *See,* ITT Fact Statement at ¶¶ 2 and 3.

The Union and ITT are parties to a collective bargaining agreement which provides for, among other things, discharge of an employee "for proper cause" (§ 5.01), and the application and observance of shop rules, existing and as modified, to all employees, subject to the grievance and arbitration procedure established under Article XXIV and XXV, respectively (§ 12.01). Article XXIV provides for a three step grievance procedure following which any grievance may be taken by a party to arbitration under Article XXV. *See,* Shine Affidavit in Support at ¶¶ 4, 5 and 7. ITT's shop rules are issued to each employee and are posted. *See,* Shine Affidavit in Support at ¶ 6. The shop rules specifically provide that they will be enforced "to maintain good working conditions and conduct on Company premises," and that a violation of that rule, Rule 1(a)–(1), will result in suspension or other disciplinary action, including discharge. *See,* Exhibit 2 to Shine Affidavit in Support. Smith was found to have violated Rule 1(j), Insubordination, which the rule does not specifically define.

On April 24, 1991, ITT discharged Smith for violating shop rules 1(h) (indecent and immoral conduct) and 3(h) (giving false information on time cards). ITT Statement of Facts at ¶ 9. This action was based on an accusation by Smith's supervisor, Mr. Ted Krempa, that on April 13, 1991, Smith had left the plant an hour earlier than the time he indicated on his time card. (Shine Affidavit in Support at ¶¶ 12 and 13). This action followed warnings given to Smith concerning two similar incidents in March, 1991 and September, 1990. Shine Affidavit in Support at ¶ 13. Following this discharge decision, the Union filed a grievance on behalf of Smith, which was processed at all three steps required by the collective bargaining agreement. ITT Statement of Fact at ¶ 10. Upon ITT's refusal to change Smith's discharge decision, the Union requested arbitration. Shine Affidavit in Support at ¶ 16. Prior to arbitration, ITT, Smith and the Union entered into a "settlement agreement" which permitted Smith to be reinstated on a "last chance" basis. Shine Affidavit in Support at ¶ 16. Specifically, the agreement, dated and effective September 11, 1991, provided that, in view of his poor employment record, Smith would be reinstated on a "last chance basis," however, any Shop Rule violation by Smith during the one year probationary period, would subject him to immediate discharge. Shine Affidavit in Support at ¶ 16. Upon signing the agreement, Smith returned to work.

Like many other businesses in this area, ITT participates in the annual United Way solicitation of its employees. Shine Affidavit in Support at ¶ 17. At ITT, this support of the United Way community charitable giving program is accomplished by employee attendance, on company time, at a meeting of groups of company employees at which United Way representatives make a brief presentation, and solicit the employees to make individual voluntary contributions. Shine Affidavit in Support at ¶ 17; Affidavit of Donald Rusert in Opposition, dated February 9, 1993 at ¶ 4. Smith's department was sched-

uled for its United Way meeting that year in the cafeteria room on October 9, 1991 at 10:30 a.m. Although ITT's Human Resources manager, Will Shine, claimed that attendance at such meetings are mandatory (*see* Shine Affidavit in Support at ¶ 17), it is also a fact that foremen in other departments of ITT do not require their employees to attend United Way meetings and employees not attending are not paged with a direction to do so. Affidavit of Roe Harrison in Support dated December 30, 1992 at ¶ 16 (Harrison Affidavit in Support); Affidavit of Guy Masocco in Support dated December 30, 1992 at ¶ 25 (Masocco Affidavit in Support); Affidavit of James Diabo in Support at ¶ 8c.

On October 8, 1991, Smith's foreman, Ted Krempa, informed each of his respective employees, including Smith and a co-worker, Don Rusert, that they were to attend the department's United Way meeting at 10:30 a.m. the next day. Krempa arrived for the meeting with other department employees at 10:20 a.m. Krempa Affidavit in Support dated December 30, 1992 at ¶ 5. Shortly after the meeting began he noticed that Smith, Rusert, and Guy Masocco, president of the Union local, were absent. Krempa Affidavit in Support at ¶ 5. Krempa then left the cafeteria and paged the three employees to report to the cafeteria on a plant-wide paging system. Krempa Affidavit in Support at ¶ 6. Masocco arrived at the cafeteria at the same time as Krempa and explained that he had been on the telephone conducting Union business. Krempa Affidavit in Support at ¶ 6. Krempa, after waiting approximately twenty minutes, left the cafeteria to locate Smith and Rusert. Krempa Affidavit in Support at ¶ 5. He found Rusert at his work station; Smith was observed walking back to the work area from the men's room. Krempa Affidavit in Support at ¶ 7. According to Krempa, when asked why he failed to attend the United Way meeting, Smith replied, using a common profanity, that as the collective bargaining agreement did not specifically require his attendance, he was not obliged to attend. Krempa Affidavit in Support at ¶ 8. Smith and Rusert deny that Smith used such profanity in responding to Krempa asserting, rather, that it was Krempa who used the profanity, which is denied by Krempa.

Smith Affidavit in Opposition at ¶ 10; Rusert Affidavit in Opposition at ¶ 6; Krempa Reply Affidavit dated February 26, 1993 at ¶ 4. Krempa became Smith's foreman in 1990 and so could not say whether Smith had attended United Way meetings in the past. According to attendance records, Smith was absent from work on the day of the 1990 meeting. Krempa Reply Affidavit at ¶ 6.

Mitchell Pacer, ITT's production manager, assisted Krempa in searching for Smith and Rusert, and quickly located Rusert who was then at his work station rolling a unit. Pacer Affidavit in Support dated February 26, 1993 at ¶ 3 (Pacer Affidavit in Support). Pacer was told by Rusert, in response to his question as to why Rusert was not at the United Way meeting, that he did not have to go and that he would not attend. Pacer Affidavit in Support at ¶ 3. In searching for Smith, Pacer entered the men's room, observed that one of the stalls was occupied, and concluded the person inside was Smith. Pacer Affidavit in Support at ¶ 4. When asked as to his whereabouts during the meeting, Smith initially stated he was "on my job," (Pacer Affidavit in Support at ¶ 6) but later admitted that he was not at his work station during the meeting. (Masocco Affidavit in Support at ¶ 23). Both Rusert and Smith were charged with insubordination and suspended, however, Rusert was reinstated following a grievance processed by the Union; Smith was discharged after his step three grievance hearing. Pacer Affidavit in Support at ¶¶ 8, 10 and 11.

At the third step grievance hearing, held before Mr. Shine, Smith's only explanation for his failure to attend was that he had "screwed up." Pacer Affidavit in Support at ¶ 10. Despite the Union's argument that Smith be reinstated and that discharge was too severe a penalty, Shine denied the grievance. Shine Affidavit in Support at ¶ 23. The Union immediately filed, on October 18, 1991, a further grievance requesting arbitration on Smith's behalf. Harrison Affidavit in Support at ¶ 17. The Union grievance committee met on or about October 28, 1991, and unanimously voted not to proceed with arbitration. Harrison Affidavit in Support at ¶ 18. The committee viewed the situation as

one where "because of the last chance agreement, ITT was within its right to terminate Mr. Smith because he had violated the rules by ignoring his supervisor's directive and ignoring the page." Harrison Affidavit in Support at ¶ 18. As the Union local president stated, "I voted not to proceed to arbitration because I felt that with the last chance agreement, there was no prospect of winning Mr. Smith's grievance." Masocco Affidavit in Support at ¶ 25. *See also* Affidavit of James Diabo in Support dated December 23, 1992 at ¶ 7 (Diabo Affidavit in Support). Although the Union refused to arbitrate this claim, it did represent Smith on his claim for state unemployment benefits. *See* Masocco Reply Affidavit, dated February 23, 1993 at p. 3.

In his opposing affidavit, Smith contended that, rather than directing him to attend the United Way meeting on October 9th, Krempa only announced that the meeting was scheduled, that during his fourteen years of employment, he has never attended a United Way meeting, that he never admitted that he had been ordered to attend the meeting; and, that to his knowledge, no employee at ITT has ever been disciplined for failure to attend a United Way meeting as a form of insubordination. Smith Affidavit in Opposition at ¶¶ 4, 12 and 13. Rusert stated that he also failed to attend United Way meetings in the past and has not been disciplined. He further stated that Krempa never informed either him or Smith that attendance at the October 9th meeting was mandatory and that when the meeting started, both Smith and he were at their work stations but that Smith later went to the men's room. Rusert Affidavit in Opposition at ¶¶ 3, 4 and 5.

### DISCUSSION

■ Summary judgment will be granted pursuant to Fed.R.Civ.P. 56 when the moving party demonstrates that there are no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law. *See, Celotex Corp. v. Catrett,* 477 U.S. 317, 331, 106 S.Ct. 2548, 2556, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Rattner v. Net-*

*burn,* 930 F.2d 204, 209 (2d Cir.1991). The burden of establishing the nonexistence of a genuine issue is on the party moving for summary judgment. *Celotex, supra,* 477 U.S. at 331, 106 S.Ct. at 2556. If there is any evidence in the record based upon any source from which a reasonable inference in the nonmoving party's favor may be drawn, the moving party cannot obtain a summary judgment. *Celotex, supra,* at 331, 106 S.Ct. at 2556.

The function of a district court in considering a summary judgment motion is not to resolve disputed issues of fact, but to determine whether there is a genuine issue to be tried. *Rattner, supra,* at 209. In assessing the record, including any affidavits, exhibits, and other submissions, the court is required to resolve all ambiguities and to draw all factual inferences in favor of the nonmoving party. *Anderson, supra,* 477 U.S. at 255, 106 S.Ct. at 2513; *Rattner, supra,* at 209. If the moving party meets its burden of showing that no genuine issue of material fact exists and that it is entitled to summary judgment as a matter of law, pursuant to Fed.R.Civ.P. 56(c), the nonmoving party "must set forth specific facts showing there is a genuine need for trial," and there must be more than merely "some metaphysical doubt as to these material facts." *Hadges v. Yonkers Racing Corp.,* 733 F.Supp. 686, 689 (S.D.N.Y.1990) (quoting, *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986)).

■ To recover under Section 301 of the Labor Management Relations Act, a plaintiff must establish that the union breached its duty of fair representation and the employer violated the collective bargaining agreement by an erroneous discharge. *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 572, 96 S.Ct. 1048, 1060, 47 L.Ed.2d 231 (1976). "[A] union breaches its duty of fair representation if its actions are either 'arbitrary, discriminatory, or in bad faith.'" *Air Line Pilots Association v. O'Neill,* 499 U.S. 65, 68, 111 S.Ct. 1127, 1130, 113 L.Ed.2d 51 (1991) (citing *Vaca v. Sipes,* 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967)). A union's action may be arbitrary if "in light of the

factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness,' *Ford Motor Co. v. Huffman,* 345 U.S. 330, 338, 73 S.Ct. 681, 686, 97 L.Ed. 1048 (1953), as to be irrational." *Air Line Pilots, supra,* 499 U.S. at 68, 111 S.Ct. at 1130. This definition of arbitrariness, enunciated in the context of a review of a union's actions in contract negotiations, has been applied to a union's processing of a disciplinary grievance. *See Garguilo v. Castle Coal & Oil Co., Inc.,* 1992 WL 331108 at p. 2 (S.D.N.Y.1992). In the Second Circuit, the test is whether the union's conduct or omissions fall "so far short of minimum standards of fairness to the employee and so unrelated to legitimate union interests as to be arbitrary." *N.L.R.B. v. Local 282, International Brotherhood of Teamsters,* 740 F.2d 141, 147 (2d Cir.1984).[1] Allegations of negligence or errors by a union in processing grievances are insufficient. *See United Steel Workers of America v. Rawson,* 495 U.S. 362, 372–73, 110 S.Ct. 1904, 1911–12, 109 L.Ed.2d 362 (1990) (mere negligence does not state a claim of unfair representation); *Barr v. United Parcel Service, Inc.,* 868 F.2d 36, 43 (2d Cir.), *cert. denied,* 493 U.S. 975, 110 S.Ct. 499, 107 L.Ed.2d 502 (1989) (tactical errors in failing to present witnesses and inadequate representation by union business agent insufficient to demonstrate bad faith or arbitrariness); *Cook v. Pan American World Airways, Inc.,* 771 F.2d 635, 645 (2d Cir.1985) (failure to prevail before arbitrator does not establish breach of duty of fair representation). Neither is it relevant that the court may believe that the employee's grievance had a high probability of success before an arbitrator. *Vaca, supra,* 386 U.S. at 192–193, 87 S.Ct. at 918–19; *Freeman v. O'Neal Steel, Inc.,* 609 F.2d 1123, 1126 (5th Cir.1980). It is clear that a union has considerable discretion in deciding whether or not to process a grievance. *See Freeman, supra,* at 1126. This discretion is, however, not unlimited and must be "rationally founded." *Barr, supra,* at 44.

In this case, Smith claims that ITT breached the contract by discharging him for a reason not previously considered to be a violation of shop rules and, therefore, his conduct did not constitute insubordination. As to the Union, Smith alleges that it failed, arbitrarily and in bad faith, to pursue his grievance to arbitration. In particular, Smith asserts that the Union's bad faith is shown by its abandonment of his grievance because it had tired of its representation of Smith in such matters, and that it arbitrarily failed to investigate the facts and pursue what Smith believes would have been a meritorious position before an arbitrator. Defendants rely primarily on their factual contention that Smith was directed but refused to attend the United Way meeting, and that such refusal to obey a direction of his supervisor constituted insubordination under the shop rules. Further, Defendants rely on the settlement agreement of September 11, 1991, or "last chance agreement" in which Smith, ITT and the Union agreed that any such violation, occurring within a one year probationary period, would justify discharge.

As to Smith's claim of bad faith, the record shows that the Union had taken some steps to inform itself of the underlying facts as to both Plaintiff's and Rusert's suspension. It was also aware that employees in other departments either were not required to attend United Way meetings or were not disciplined for failure to do so. The Union initially protested both suspensions, and carried the matter through a third step meeting, also filing a request for arbitration in accordance with the contract's grievance procedures. Moreover, at its pre-arbitration review meeting, the Union clearly focused on its belief that the failure to respond to the page was an act of insubordination and that the last chance agreement, along with Smith's poor employment record, eliminated any possible relief from the company's decision to discharge Smith. The court notes that the Union also provided representation to Smith at the hearing on his unemployment benefits

---

**1.** While it is not clear that the irrationality standard is to be applied in assessing the alleged arbitrary character of a union's processing of a grievance, applying it or the unreasonableness test stated by the Second Circuit in *N.L.R.B. v. Local 282, supra,* does not affect the outcome of this motion.

claim. There is no evidence to suggest that the Union's decision not to proceed to arbitration was in bad faith. Smith effectively concedes that this is true as he states in his memorandum of law that the "crux" of his position is that the Union's action "amounts to arbitrary conduct *per se.*" *See* Plaintiff's Memorandum of Law in Opposition dated February 12, 1993 at page 5. The court finds, therefore, that there are no genuine material issues of fact on Plaintiff's claim that the Union breached its duty of fair representation by failing, for reasons of bad faith, to take his grievance to arbitration. As a breach by both the Union and Company must be shown, summary judgment as to this part of Smith's claim is GRANTED.

The appropriateness of summary judgment based on Smith's claim that the Union acted arbitrarily and therefore unfairly in representing him against ITT's insubordination charge, however, is a different matter.

 Both ITT and the Union rely on the last chance agreement and Smith's poor disciplinary record. In the ITT's and the Union's view, Smith plainly violated a directive, constituting an act of insubordination within the meaning of the shop rule. In the Union's view, the existence of the last chance agreement rendered it futile to pursue arbitration as the agreement authorized dismissal for any violation of the rules within the probationary period, as defined in the agreement. As an amendment to the collective bargaining agreement, a last chance agreement is enforceable against the Union and the employee, and may circumscribe the scope of review which otherwise would be available to an arbitrator in considering a grievance. *See Coca–Cola Bottling Company v. Teamsters Local 688,* 959 F.2d 1438, 1442 (8th Cir.1992); *Tootsie Roll Industries Inc. v. Local Union No. 1,* 832 F.2d 81, 84 (7th Cir.1987); *Gargiulo v. Castle Coal & Oil Co., supra.* While a last chance agreement may well place issues beyond the reach of arbitrators issues that might provide the basis of relief, *see, e.g., Tootsie Roll Industries Inc., supra,* it is also clear that the employee does not waive his right to an arbitrator's determination of whether the disputed conduct actually constitutes a violation of the

agreement. *See United Steelworkers v. Lukens Steel Co.,* 969 F.2d 1468 (3d Cir.1992) (last chance agreement held not to preclude arbitration of alleged violation of the agreement).

Here, Smith's last chance agreement required that he comply with all shop rules during the one year probationary period and that any violation would subject Smith to discharge. The instant agreement, however, while arguably removing the question of the appropriateness of discharge as a sanction for violation of the agreement did not waive Smith's right to contest whether the alleged misconduct actually constituted a violation of ITT's shop rules. Here, the Union was at the time concededly aware that other employees were not required to attend United Way meetings. Smith has alleged that, in his experience over his fourteen years of employment, no employee has ever been disciplined for failing to attend such meetings. Defendants do not directly contradict this statement. Although a court may not speculate as to what result may have been achieved had arbitration taken place when determining the issue of the Union's breach of duty, the question of what an arbitrator reasonably could have considered in reaching a conclusion is relevant to the issue of whether ITT may be liable to the employee on his breach of contract claim. *See Achilli v. John J. Nissen Baking Co.,* 989 F.2d 561, 563–64 (1st Cir.1993) (disparate treatment of employees as to similar alleged misconduct held relevant). Further, how an employer has previously interpreted its collective bargaining agreement may be based upon the "practice, usage and custom pertaining to ... such agreement[s]." *Transportation–Communication Employees Union v. Union Pacific Ry. Co.,* 385 U.S. 157, 161, 87 S.Ct. 369, 371–72, 17 L.Ed.2d 264 (1966). *See also Achilli, supra.*

The issue in this part of the instant motion is whether there is a genuine issue of material fact upon which a jury could conclude that the union arbitrarily determined it could not succeed in arbitration on Smith's grievance. There are several issues directly bearing on whether Smith committed an act of insubordination under shop rules and whether the

Union unfairly represented him by failing to take his grievance to arbitration. First, the record shows there is a serious dispute as to whether Krempa, Smith's foreman, ordered Smith to attend the meeting. Smith stated that Krempa simply announced that there was to be a meeting the next day; Krempa insists he directed both Smith and Rusert to attend. Second, while Defendants maintain that Smith admitted that he heard the page after his absence from the meeting was noted by Krempa, Smith swears that no such admission was made. Defendants argue that Smith admitted he was not at his work station. However, a question of fact is also presented as to whether his use of the lavatory at the time of the page would excuse his absence. If a jury resolves these issues in favor of Smith, it could also conclude that the Union arbitrarily accepted ITT's version in deciding not to pursue Smith's grievance. Third, based on Smith's assertions as to ITT's failure to take disciplinary action in the past against other employees who may have failed or refused to attend such meetings, an issue of fact is presented as to whether ITT properly interpreted and applied the shop rule against insubordination to Smith's failure to attend the United Way meeting as directed.

Defendants' argument that Smith's failure to answer the page constituted insubordination so as to preclude potential relief in arbitration is not decisive. The evidence submitted shows that Smith may reasonably have believed he was being reminded to attend the United Way meeting, and that his failure to respond would not be viewed as a deliberate refusal to obey a work related directive amounting to insubordination and justifying· disciplinary action and sanctions. It is undisputed that Rusert, who stated he also had refused in the past to attend such meetings without sanction, also failed to respond to the page. There remains an issue of fact as to whether the Union arbitrarily believed the page constituted a supervisory directive which a reasonable employee would understand as subjecting him, upon refusal to comply, to an insubordination charge, potentially leading to loss of employment. Defendants maintain that the issue of Smith's refusal to answer the page is irrelevant to his failure to attend the United Way meeting. However, a fair reading of the record suggests that the two facts are actually closely connected. Last, a related issue of fact is presented as to whether the Union arbitrarily concluded that, notwithstanding the past practice and custom of ITT regarding refusals or failures to attend such meetings, as Smith was already subject to the last chance agreement and had a history of disciplinary problems, there was no chance of success before an arbitrator on the issue of whether Smith's conduct constituted insubordination under the shop rule. Such past practices and customs are part of the "factual and legal landscape at the time of the union's action," *See Air Line Pilots Association, supra,* 499 U.S. at 68, 111 S.Ct. at 1130, against which the jury would be entitled to evaluate Smith's claim of arbitrariness.

Defendants rely on *Tootsie Roll Industries, supra,* to support their contention that, as the last chance agreement specifically authorized discharge for any shop rule violation, ITT was justified in taking the action against Smith it did, and that it was reasonable for the Union to determine it could not prevail in arbitration. However, in *Tootsie Roll Industries,* unlike this case, the last chance agreement specifically redefined the standard for determining whether an absenteeism violation occurred. Moreover, the agreement mandated discharge in the event of a violation. Here, the last chance agreement in establishing the basis for future violations refers only to shop rules enforceable under the collective bargaining agreement thereby requiring an interpretation and application of the insubordination rule. Such interpretation and application necessarily will take into account an arbitrator's potential view of the effect of past practice and custom on whether a shop rule violation had been demonstrated.

Even assuming that the irrationality standard established by *Air Line Pilots* also applies in a fair representation case based on claims involving arbitrary failure to process a grievance, a trial is clearly warranted on Smith's claim. A close examination of the alleged reasons given by the Union for refusing to proceed to arbitration demonstrates

there are triable issues as to the reasonableness of the Union's decision not to proceed. For example, Guy Masocco, president of the local, stated that he voted against arbitration because "with the last chance agreement, there was no prospect of winning [Smith's] grievance." Masocco Affidavit in Support at ¶ 25. Masocco relied almost entirely on the fact that Smith was subject to the last chance agreement to justify discontinuing the grievance procedure. The Union, it is clear, was willing to arbitrate Rusert's grievance for the same misconduct but not Smith's because Rusert was not subject to such an agreement and had a better work record than did Smith. *See* Masocco Reply Affidavit at ¶¶ 3 and 10. For example, James Diabo, a Union grievance committee member who processed Smith's grievance, similarly concluded that Smith's conduct violated the shop rule and "based on that [last chance] agreement and [Smith's] conduct, did not feel that the grievance was meritorious or that we could win it in arbitration." Diabo Affidavit in Support at ¶ 3. Roe Harrison, the Union grievance committee chairman who handled Smith's grievance also concluded that as Smith was subject to the last chance agreement "the grievance did not merit arbitration" despite the fact that the Union was aware other employees in other Company departments did not attend the United Way meeting. Harrison Affidavit in Support at ¶ 18.

Further, all three committee members pointed to the fact that Smith's employment record, unlike Rusert, was not unblemished. *See* Masocco Affidavit in Support at ¶ 25, Diabo Affidavit in Support at ¶ 7, Diabo Reply Affidavit at ¶ 6 and Harrison Affidavit in Support at ¶ 15.

It is clear that the Union's decision not to proceed to arbitration was profoundly influenced if not dictated by a belief that Smith's last chance agreement and employment record rendered further arbitration fruitless. However, the agreement (*See* Exhibit 11 to Defendants' motion filed January 4, 1993) provided only that "*if* [Smith] violates any shop rules [sic] for a probationary period of 1 year, he will be *subject* to immediate discharge." (emphasis added.) A jury could reasonably find that the agreement neither foreclosed Smith from challenging an ITT disciplinary charge nor that it necessarily mandated automatic discharge for any such violation. This is consistent with ITT's termination notice to Smith that his employment was being terminated for just cause under the collective bargaining agreement. *See* Exhibit 12 to Defendants' motion filed January 4, 1993.

As noted, the last chance agreement does not specifically waive any of Smith's grievance rights under the collective bargaining agreement. The Union, however, apparently believed Smith's grievance lacked merit because of the mere existence and effect of the last chance agreement. Further, the Union also concluded that Smith's past record precluded any reasonable possibility of success in arbitration. In either case, the fact that Smith's last chance agreement may be interpreted as justifying termination does not foreclose the issue of the existence of a shop rule violation. Moreover, Smith's past record would arguably have been relevant to the appropriate choice of sanction, but it is not necessarily relevant to whether he was insubordinate in this instance. Neither the Union nor ITT in their motions claim that the agreement foreclosed further arbitration of whether a violation in fact occurred. The jury could reasonably conclude that the Union based its decision on factors which had nothing to do with the critical question of whether Smith has violated the shop rule.

While the Union affidavits in support of its motion assert neither Smith nor Rusert advised the grievance committee members that they had not in the past attended United Way meetings, it is clear that the Union was aware this could be an issue as it was aware other employees were not required to attend. The opposing affidavits of Smith and Rusert do not directly contradict this position, however, Defendants' themselves have asserted that when confronted by his foreman for not attending the United Way meeting, Smith belligerently demanded that he be shown that such attendance was required by the collective bargaining agreement. Also, neither Defendant denies that the Union would have taken Rusert's case to arbitration if it had not been earlier resolved. These two

facts could support an inference that Smith's alleged failure to advise the Union that the lack of attendance at the United Way meeting by Smith and Rusert was not significant to the Union's consideration of the merits or that, if it was important, the Union had some basis to be aware of or ascertain that fact.

The jury could, if it accepts Smith's evidence, conclude therefore that, even if Smith had been directed to attend the meeting as Defendants claim, the Union's decision not to contest his discharge through arbitration, in the circumstances presented, was so unreasonable as to be fundamentally unfair and irrational. These same considerations also provide a basis on which the jury could conclude that ITT's finding of insubordination was not authorized by the last chance agreement and, therefore, violated the collective bargaining agreement.

### CONCLUSION

There are genuine issues of material facts going to the merits of Plaintiff's claim on a breach of the Union's duty of fair representation based upon an arbitrary refusal to carry Smith's grievance to arbitration. Additionally, there are genuine issues of material facts as to the claim against ITT for improper discharge under the contract. Accordingly, Defendants' motions for summary judgment on these issues are DENIED. However, as there are no material issues of fact relating to Plaintiff's bad faith claim, Defendant Union's motion for summary judgment on this claim for relief is GRANTED.

SO ORDERED.