**Joanne Mary MURPHY, Plaintiff,**

v.

**The CHICAGO TRANSIT AUTHORITY, et al., Defendants.**

**No. 85 C 2595.**

United States District Court, N.D. Illinois, E.D.

March 11, 1986.

DeJong, Poltrock & Giampietro, Chicago, Ill., for plaintiff.

Leslie South, Rothschild, Barry & Myers, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

GETZENDANNER, District Judge:

Plaintiff Joanne Mary Murphy, a former Chicago Transit Authority ("CTA") staff attorney, filed a three-count action against the CTA and seven of its employees seeking compensatory and punitive damages for sex discrimination under Title VII of the Civil Rights Act of 1964 (Count I), intentional infliction of emotional distress (Count II), and willful and wanton conduct (Count III). Subject matter jurisdiction is predicated on 42 U.S.C. § 2000e and 28 U.S.C. § 1331. In a Memorandum Opinion and Order from this court dated October 21, 1985, Counts II and III were dismissed, and Count I was dismissed as to the three defendant co-workers, but not as to the CTA itself or the three defendant supervisors. Plaintiff now seeks to amend her complaint with a fourth count, brought pursuant to 42 U.S.C. § 1983, for violation of her fourteenth amendment rights. For the

reasons stated below, the court will grant plaintiff's motion to amend with the qualifications discussed below.

## Statement of Facts

The allegations of this case were reviewed in the October 21, 1985 opinion and need only be briefly summarized here. For purposes of the current motion, the allegations are taken as true. Plaintiff Murphy worked as a staff attorney for defendant CTA from April of 1983 through August 3, 1984. During the last five months of her employment, she was subjected to constant degrading and humiliating sexual remarks by defendants and fellow staff attorneys Robert Hilbert, Terry Luckman, and Michael Lyons. The remarks included questions about when plaintiff last had oral sex, requests for plaintiff to lift up her skirt, suggestions that plaintiff give opposing counsel in a personal injury action a "blow job," and other comments about the nature of plaintiff's sexual activity. Defendant Hilbert repeatedly touched and pulled at Murphy's clothing, untying the ties of her blouse. These remarks and actions often took place in public and in the presence of witnesses.

On numerous occasions during her employment, plaintiff complained of this conduct to the defendants Loretta Eadie-Daniels, Supervisor; Ronald Barkowicz, Deputy Attorney; and John E. Powers, Supervisor. No corrective action was taken. Rather, the CTA began assigning plaintiff to menial, demeaning tasks which previously had been rotated among all the staff attorneys. Plaintiff also alleges that defendant Bruce Talega, the supervisor of defendants Luckman and Lyons, "knew or should have known of their abusive and harassing treatment of plaintiff." (Count IV ¶ 8). He also failed to stop or otherwise control these actions.

In her complaint, plaintiff describes the defendant co-workers' actions as intentional and "designed to discriminate against Plaintiff on the basis of her sex." (Id. ¶ 7). The supervisory defendants and the CTA are charged with maintaining and implementing a policy and practice of "deliberate indifference" to violations of plaintiff's rights. (Id. ¶ 9). As a result of all the foregoing, plaintiff resigned on August 3, 1984 and filed an EEOC complaint alleging constructive discharge. She alleges that since her resignation she can no longer function as a trial attorney and has had to seek professional therapy to alleviate the stress caused by defendants.

## Legal Discussion

Although the present motion is for amendment of the complaint, the parties have argued only whether the proposed Count IV states a claim for which relief can be granted. This is because leave to amend a complaint under Fed.R.Civ.P. 15(a) may be denied if the amendment would be futile. *Cohen v. Illinois Institute of Technology*, 581 F.2d 658 (7th Cir.1978), *cert. denied*, 439 U.S. 1135, 99 S.Ct. 1058, 59 L.Ed.2d 97 (1979); *Verhein v. South Bend Lathe, Inc.*, 598 F.2d 1061 (7th Cir.1979). Thus, the parties do not argue about the presence of any of the factors which normally might defeat a motion to amend under *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962), such as inexcusable delay or prejudice. Accordingly, the court will address the issue of whether Count IV states a claim under Fed.R.Civ.P. 12(b)(6).

## Defendants Hilbert, Luckman and Lyons—The Co-Workers

Under 42 U.S.C. § 1983,

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

In every § 1983 action, one crucial element is whether the plaintiff has been deprived of some federally secured constitutional or statutory right by someone acting "under color of state law." *See Lugar v. Ed-*

*mondson Oil Co.,* 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982); *Flagg Brothers Inc. v. Brooks,* 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The critical question as to Hilbert, Luckman, and Lyons, therefore, is whether their conduct can be said to have been taken under color of state law.

The Supreme Court has held "that misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law." *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 929, 102 S.Ct. 2744, 2750, 73 L.Ed. 482 (1982) (quoting *United States v. Classic,* 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368 (1941)); *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); *Screws v. United States,* 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945). In *Screws,* the Court stressed that the acts of the state employees must be under "pretense" of some state law. 325 U.S. at 111. That pretense is lacking if the wrongful acts are not in any way related to the performance of the duties of the state employee. *Johnson v. Hackett,* 284 F.Supp. 933, 937 (E.D.Pa.1968). In *Johnson,* the defendant police officers had shouted racial insults to a group of blacks and challenged the group to fight, this all occurring while the officers were on duty and in uniform. Certain members of the group sought to hold the police liable under § 1983, prompting the following discussion from the court:

> What plaintiff's position boils down to is that any act committed by a police officer while on duty and in uniform is under "color of law," even if the act is wholly unrelated to the performance of any of his duties. This contention attempts to equate "clothed with the authority of state law" to "wearing a policeman's uniform." Of course they are not the same. It is the nature of the act performed, not the clothing of the actor or even the status of being on duty, or off duty, which determines whether the officer has acted under color of law. If the officer

was enabled to do what he did because of the authority of his office, even if what he did constituted an abuse of that authority, either by the excessiveness of his conduct or because the act was not actually, although apparently, authorized, the act is under "color of law."

*Id.*

■ The Supreme Court agrees that mere employment by the state, although relevant to a determination of whether a defendant's actions are taken under color of state law, is not conclusive. *Polk County v. Dodson,* 454 U.S. 312, 321, 102 S.Ct. 445, 451, 70 L.Ed.2d 509 (1981) (public defenders do not act under color of state law when lawyering, even though state employees, because state does not have authority over their actions; overruling *Robinson v. Bergstrom,* 579 F.2d 401, 405–08 (7th Cir. 1978), cited by plaintiff). *Accord Brown v. Miller,* 631 F.2d 408, 411 (5th Cir.1980) (cited by plaintiff) (mere status of state employee not sufficient); *Warner v. Croft,* 406 F.Supp. 717, 721 (W.D.Okla.1975) (nature of the acts done, not mere status as state employee, determines whether action was under color of state law). Thus, in *Delcambre v. Delcambre,* 635 F.2d 407 (5th Cir.1981), the chief of police who assaulted his sister-in-law on the premises of the municipal police station while on duty was not liable under § 1983. Similarly, in *Rogers v. Fuller,* 410 F.Supp. 187 (M.D.N.C. 1976), the act of stealing, even by a police officer on duty and in uniform, was held to be a personal, private pursuit and not committed under color of state law. But a police officer who uses excessive force to make an arrest is acting under color of state law, *see Hausman v. Tredinnick,* 432 F.Supp. 1160 (E.D.Pa.1977), as is an officer who effectuates an arrest outside his jurisdiction, even though without actual authority to make the arrest, *see United States ex rel. Brzozowski v. Randall,* 281 F.Supp. 306 (E.D.Pa.1968).

In short, it appears that a person acts "under color of state law" when he engages in conduct that is related to state authority conferred on the person, even

though that authority does not in fact permit the conduct. Applying these general standards to this case, and reading plaintiff's allegations liberally, the following observations can be made.

Defendants Hilbert, Luckman and Lyons engaged in their abusive and offensive conduct while at their place of employment. The defendants were capable of harassing plaintiff only because their jobs enabled them to have frequent encounters with her. Therefore, it may be said that defendants' contacts with plaintiff were made possible only because defendants were given certain state authority, namely CTA staff attorney jobs, and that in the course of exercising their authority, the defendants abused plaintiff in a sexually discriminatory manner.

■ This conclusion, however, does not mean that defendants' actions were pursued under color of state law. As the preceding case discussion just revealed, actions taken under color of state law must be related to the state authority conferred on the actor, even though the actions are not actually permitted by the authority. Here, however, the abusive conduct was not in any way related to the duties and powers incidental to the job of CTA staff attorney. That the conduct occurred on the CTA work premises is not enough to render it "related to" the state authority conferred on the defendants. *See, e.g., Delcambre.* For conduct to relate to state authority, it must bear some similarity to the nature of the powers and duties assigned to the defendants. *E.g., Johnson v. Hackett.* Here, the humiliating comments and harassing behavior had nothing to do with, and bore no similarity to, the nature of the staff attorney job. The CTA job, limited as it was to representing the CTA in legal matters, did not and could not give the illusion that sexual harassment, albeit during work hours, somehow related to the nature of that job. When the Supreme Court in *Polk County* was confronted with the question of whether a public defender's decision to withdraw from a frivolous appeal was under color of state law, the

Court held it was not, reasoning that since the state has no relationship to the public defender's choices in representing a client, a decision to withdraw from a frivolous appeal did not relate to any state powers assigned to the defender. 454 U.S. at 320–22, 102 S.Ct. at 450–52. The mere fact of employment was not enough to create that relationship. *Id.* Clearly, the sexual abuse here is, if possible, even less related to the job of a state-employed attorney than a defender's decision to withdraw as counsel. However tortious their actions, the defendants' sexual harassment, under *Polk County,* may not be considered under color of state law. Therefore, Count IV cannot state a claim against Hilbert, Luckman, and Lyons.

### Defendants Bartkowicz, Powers, Eadie-Daniels, and Talaga

■ Having determined that the co-worker staff attorneys were not acting under color of state law, the court must now determine whether the supervisors can be held liable under § 1983 for their deliberate indifference in permitting the sexual harassment to continue virtually uninterrupted for five months. Plaintiff's authority is helpful in this regard. She cites *Hassel v. Philadelphia,* 507 F.Supp. 814 (E.D. Pa.1981) in which the court stated:

> I agree that if a police supervisor has specific, reliable information that certain officers routinely engage in violations of constitutional rights in discharging their duties, the supervisor may be held liable for failing to exercise his authority to prevent the further violations of civil rights by these officers.

507 F.Supp. at 817. This is also the rule of the Seventh Circuit. *See, e.g., Crowder v. Lash,* 687 F.2d 996, 1005 (7th Cir.1982) ("An official satisfies the personal responsibility requirement of section 1983 if she acts or fails to act with a deliberate or reckless disregard of plaintiff's constitutional rights, or if the conduct causing the constitutional deprivation occurs at her direction or with her knowledge and consent."). Under this authority, a supervisor

is liable if he knows of and nevertheless continues to permit routine violations of a plaintiff's *constitutional* rights. Here, it is clearly alleged that the supervisors knew of and nevertheless continued to permit sexual harassment. The question, then, is whether the staff attorney's harassment violated plaintiff's constitutional rights. The harassment, allegedly a violation of the fourteenth amendment, can violate plaintiff's constitutional rights only if it was a product of state action, as the fourteenth amendment only addresses state action.

■ The issue of state action, of course, was relatedly examined in the previous section of this opinion dealing with color of state law. While the two inquiries of state action and color of state law are similar, they are nevertheless distinct, *see, e.g., Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 935 n. 18, 102 S.Ct. 2744, 2752 n. 18, 73 L.Ed.2d 482 (1982); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152, 90 S.Ct. 1598, 1605–06, 26 L.Ed.2d 142 (1970), and conduct which gives rise to one will usually, but not necessarily, support the other. *Lugar,* 457 U.S. 922, 935 n. 18, 102 S.Ct. 2744, 2752 n. 18. The nature of that difference is that action which is under color of state law for purposes of the § 1983 statute may not always meet the more stringent constitutional requirement of state action. *Id.* Therefore, it follows *a fortiori* that conduct which is not under color of state law, as is true of the staff attorneys here, will certainly not meet the state action requirement for a fourteenth amendment constitutional violation. Accordingly, the staff attorneys' harassment of plaintiff did not amount to a violation of plaintiff's *constitutional* rights.

Having reached this conclusion, it follows that the supervisor's knowledge of and deliberate indifference to the staff attorneys' sexual harassment of plaintiff is not actionable under § 1983. *Hassel* and *Crowder* hold that supervisor liability attaches only when the supervisor has been recklessly indifferent to violations of constitutional rights. The staff attorneys' abusive behavior, however, not being state

action, was not violative of plaintiff's constitutional rights. The supervisors, therefore, cannot be held liable under § 1983 for their allegedly reckless disregard of the staff attorneys' behavior.

■ There is, however, one other way that the supervisors can be liable under § 1983. If the supervisors *intended* plaintiff to be the victim of discrimination through the medium of the staff attorneys, then a § 1983 action would lie against the supervisors. The state of mind required of an actor before he may be held to violate the Constitution varies from section to section of the Constitution. An actor may be held liable under the equal protection clause if he or she possesses a discriminatory intent or purpose and discrimination actually results. *See Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 265, 97 S.Ct. 555, 563, 50 L.Ed.2d 450 (1977) (refusing to find an equal protection violation based solely on discriminatory results alone; intent is required); *Crawford v. Edmonson,* 764 F.2d 479, 487 (7th Cir.1985) (negligence allegation insufficient for an equal protection violation; intent required). By contrast, a prison official may violate the eighth amendment merely upon a showing of reckless indifference to the fact that a prisoner, a private actor, will inflict injury on another prisoner amounting to cruel and unusual punishment. *See State Bank of St. Charles v. Camic,* 712 F.2d 1140, 1145–46 (7th Cir.) (citing to *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)), *cert. denied,* 464 U.S. 995, 104 S.Ct. 491, 78 L.Ed.2d 686 (1983). Therefore, in this case, the supervisors may be charged with violating the equal protection clause if the discriminatory result—the sexual harassment perpetrated by the staff attorneys—was allegedly the intent or purpose of the supervisors. Plaintiff's complaint alleges only that it was supervisory "deliberate indifference" that led to the sex discrimination.

■ The question for this court, then, is whether "deliberate indifference" can fair-

ly be said, in the context of this complaint, to imply "intent." A court should avoid hair splitting when construing a complaint, so any doubts about whether deliberate indifference connotes intent to discriminate, or merely recklessness in permitting discrimination, should be resolved in plaintiff's favor. Of course, by definition any deliberate action is intentional. Thus, the language in this proposed count amounts to an allegation that the supervisors intentionally avoided taking any corrective action whatsoever after being repeatedly told of the sexual abuses against plaintiff and appealed to for assistance. A plausible, if not inevitable, inference from this allegation is that the supervisors intended for there to be discrimination against plaintiff on the basis of sex. This inference of intent is strengthened by the further allegation that the CTA, presumably through the supervisors themselves, intentionally assigned plaintiff to demeaning and menial work after she complained of her sexual harassment. In short, then, the complaint, liberally read, supports an allegation that the supervisors intended, through their inaction, sexual harassment and discrimination. Such supervisory intent, presumably under color of state law and state action, is unconstitutional.

To summarize, there are two ways for plaintiff to maintain a § 1983 action against the supervisors. First, she can allege that the supervisors were recklessly indifferent to violations of her constitutional rights perpetrated by others. This tack is unavailable because the staff attorneys' actions were not state actions and therefore did not violate plaintiff's constitutional rights. The second approach is to go after the supervisors for their intentional participation in plaintiff's injuries and allege that, although the staff attorneys' actions were private, the supervisors intended that some of the staff attorneys who work at the CTA cause some sort of sex discrimination, such as the constructive discharge due to the harassment, or the harassment itself. This approach is available here because discriminatory intent can be reasonably inferred from plaintiff's literal allega-

tion that the supervisors were "deliberately" indifferent to the sexual abuses being perpetrated on plaintiff; and that they intentionally assigned to plaintiff demeaning tasks after she began to protest the sexual harassment. This approach, of course, requires that such intentional actions be under color of state law. Because the parties have not argued the point, the court assumes the supervisors' actions were under color of state law, especially considering the nature of control over the workplace that state law gives the supervisors.

**Defendant CTA**

The parties, in arguing the § 1983 liability of defendant CTA, are willing to assume that the CTA is equivalent to the City of Chicago for purposes of § 1983 analysis. The court sees no reason to challenge this view and therefore will not address the question of whether the CTA, as a mere city agency, is not a suable entity, and whether the city itself should have been sued. Furthermore, the parties agree that the standard of liability for the CTA under § 1983 is governed by *Monell v. Department of Social Services*, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978):

> [A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

There is "no reason why an official policy cannot be inferred from the omissions of a municipality's supervisory officials, as well as from its acts." *Turpin v. Mailet*, 619 F.2d 196, 201 (2d Cir.), *cert. denied*, 449 U.S. 1016, 101 S.Ct. 577, 66 L.Ed.2d 475 (1980). However, the supervisors' knowing acquiescence or deliberate indifference to violations of plaintiff's rights must be alleged. See *Lenard v. Argento*, 699 F.2d 874, 885 (7th Cir.), *cert. denied*, 464 U.S. 815, 104 S.Ct. 69, 78 L.Ed.2d 84 (1983);

*Owens v. Haas,* 601 F.2d 1242, 1246 (2d Cir.), *cert. denied,* 444 U.S. 980, 100 S.Ct. 483, 62 L.Ed.2d 407 (1979); *Spriggs v. City of Chicago,* 523 F.Supp. 138, 142 (N.D.Ill. 1981) (Getzendanner, J.). Of course, as defendants correctly point out, because § 1983 speaks only to federal rights, the supervisory deliberate indifference or acquiescence must be to violations of federal rights. And one single incident of a constitutional violation will not support an allegation of a municipal "policy." *See Bell v. City of Milwaukee,* 746 F.2d 1205, 1272 (7th Cir.1984).

■ Here, as explained above, plaintiff successfully alleged violations of her constitutional rights with her allegations of supervisory deliberate indifference to constant sexual harassment. Precisely because the underlying constitutional violations here are based on the deliberate indifference of the supervisors, it follows that the supervisors were deliberately indifferent to their own constitutional violations. Furthermore, because this supervisory indifference was sustained continually over a five-month period of repeated harassment, this case involves more than a single, isolated constitutional violation. Therefore, plaintiff's constitutional deprivations may be fairly attributed to the CTA as a policy, thus making the CTA liable to plaintiff under § 1983 for damages.

### Punitive Damages

■ Plaintiff has prayed for one million dollars in actual and punitive damages. No allocation is made between the two types of damages or among the various defendants. Defendant CTA is not liable for punitive damages under § 1983. *Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981); *Planned Parenthood Association v. Chicago Transit Authority,* 767 F.2d 1225, 1233–34 (7th Cir. 1985). Of course, no punitive damages are recoverable against defendants Hilbert, Luckman, and Lyons because no claim has been stated against them. The only remaining issue, then, is whether punitive

damages are recoverable against the supervisors.

■ Defendants contend that the supervisors are being sued in their official capacity and therefore are not liable for punitive damages under § 1983. It is true that the complaint does not expressly state that the action is against the supervisors in their personal capacity, so it could be assumed the suit is only brought against them as officials. *Kolar v. County of Sangamon,* 756 F.2d 564, 568–69 (7th Cir.1985). However, plaintiff's opening brief (p. 4) indicates that the suit is against the supervisors as individuals, and this may be sufficient to render this a personal capacity action. *See Kentucky v. Graham,* —— U.S. ——, 105 S.Ct. 3099, 3106 n. 14, 87 L.Ed.2d 114 (1985). If so, punitive damages could certainly be sought from them. *Id.* at 3106 n. 13. In any event, even if this is an official capacity action, punitive damages are recoverable from the supervisors:

> [A] suit against a public official in an official capacity would not necessarily preclude an award of punitive damages against that official. Under *Smith v. Wade,* 461 U.S. 30 [103 S.Ct. 1625, 75 L.Ed.2d 632] (1983), a jury may assess punitive damages in a Section 1983 action when the defendant's conduct involves "reckless or callous indifference to the federally protected rights of others." Id. at 56. It seems that a public official whose reckless actions give rise to liability under Section 1983 could still be acting within the scope of employment or in an "official capacity." (further citations omitted).

*Kolar,* 756 F.2d at 569 n. 7. Thus, regardless of how this action is characterized, punitive damages may be recovered from the supervisors if their actions involved "reckless or callous indifference to [plaintiff's] federally protected rights." Plaintiff has met this standard here. She alleges supervisory deliberate indifference to frequent humiliating sexual remarks, requests, and touchings. In the previ—— tion of this opinion, this court he. deliberate indifference constitute

tion of plaintiff's constitutional rights. That same deliberate indifference may also serve as the basis for a punitive award. *Smith v. Wade,* 461 U.S. 30, 103 S.Ct. 1625, at 1637–40, 75 L.Ed.2d 632. The supervisors are therefore liable for punitive damages.

### Conclusion

Plaintiff is given leave to file her proposed Count IV in that the amendment would not be futile. However, the count is construed as not stating any claim against defendants Hilbert, Luckman, and Lyons. It is construed as stating a claim against the supervisor defendants for actual and punitive damages. It is also construed as stating a claim against defendant CTA for actual, but not punitive, damages. This order does not prejudice defendants from challenging the sufficiency of Count IV on grounds not argued in the current briefs.

It is so ordered.