Richard C. SEGRETO, Jr., Plaintiff,

v.

Kenneth KIRSCHNER, et al., Defendants.

Civil Action No. 3:95 CV 0447(GLG).

United States District Court,
D. Connecticut.

May 30, 1997.

James S. Brewer, West Hartford, CT, Owen P. Egan, Hartford, CT, Dawn Greenlaw, Glastonbury, CT, for Plaintiff.

Stephen J. O'Neill, Margaret Q. Chapple, Terrance O'Neill, Asst. Attys. Gen., Hubert J. Santos, Hope C. Seeley, Hartford, CT, Elliot B. Spector, Michael McAndrews, Karyl Carrasquilla, West Hartford, CT, for Defendants.

## MEMORANDUM DECISION

GOETTEL, District Judge.

This matter comes before the Court on defendants Charles Rival ("Rival") and Lawrence Callahan's ("Callahan") motion for summary judgment. Plaintiff, Richard Segreto ("Segreto"), claims that defendants violated his "civil and due process rights by intentionally, [sic] assaulting, battering, sexually harassing, defaming and discriminating against plaintiff without reason in violation of his civil rights."[1] Plaintiff's Objection to Magistrate Judge's Recommended Ruling, p. 1. For the reasons discussed below, we ratify and adopt the Magistrate Judge's recommended ruling and GRANT defendants' motion for summary judgment (document # 56).

## PROCEDURAL HISTORY

Defendants Rival and Callahan moved for summary judgment January 12, 1996. This motion then was referred to Magistrate Judge Holly B. Fitzsimmons on April 4, 1996 by the late Judge T.F. Gilroy Daly to whom this case was then assigned. On September 26, 1996, plaintiff filed a motion for an extension of time to complete discovery and respond to defendants Rival and Callahan's motion. An interim ruling on summary judgment was filed on September 26, 1996. Oral argument was held on October 7, 1996, after which the Magistrate Judge granted defendants' motion, and the ruling was entered in the Clerk's office in Bridgeport on March 14, 1997.

Believing that no objections to the Magistrate Judge's ruling had been filed, this Court, by endorsement, ratified and adopted the recommended ruling on March 28, 1997, granting summary judgment for defendants Rival and Callahan. However, when it became apparent that objections had been

---

1. Plaintiff brings this action pursuant the Fourth and the Fourteenth Amendments to the United States Constitution and 42 U.S.C. §§ 1983, 1985, and 2000e. Plaintiff also alleges violations of Conn. Gen. Stat. §§ 46a–58, 46a–60, 46a–70, 46a–71, and 46a–81c and Article One, Sections One, Seven, Nine, Ten, and Twenty of the Connecticut Constitution. The defendants named in the complaint are Kenneth Kirschner, David Ogle, James Tracy, Anthony Murphy, Charles Rival, and Lawrence Callahan.

made but not received by the Court, that decision was vacated. Having now received all of the relevant papers, we consider defendants' motion, the Magistrate Judge's ruling and the plaintiff's objections to it.

## FACTS AND DISCUSSION

For the sake of brevity, we do not restate the facts or the standard for summary judgment, both of which were set forth in detail in the Magistrate Judge's ruling. To the extent that plaintiff has not raised on objection, we ratify and adopt the Magistrate Judge's ruling and her reasoning therein in the absence of objection. With respect to those issues to which plaintiff objects, we make the following de novo determination. *See* Fed.R.Civ.P. 72(b).

*Plaintiff's Objections Nos. 1 & 2*

Plaintiff first objects to the Magistrate's ruling on the grounds that the motion for summary judgment was made prior to the completion of discovery. He argues that, as a result, he was forced to submit an incomplete memorandum, exhibits, and Local Rule 9(c) statement.

■ As a preliminary matter, we note that the proper procedure for opposing a motion for summary judgment on the grounds that additional discovery is needed is to file a Rule 56(f) affidavit. Plaintiff did not file such an affidavit. Rather, in his response to the Magistrate Judge's interim ruling on defendants' motion for summary judgment, plaintiff stated that additional discovery was necessary.[2] A reference to the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitution for a Rule 56(f) affidavit. *Paddington Partners v. Bouchard,* 34 F.3d 1132, 1137 (2d Cir.1994). The failure to file an affidavit under Rule 56(f) is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate. *Id.*

■ However, even if we were to consider plaintiff's objection, there is no requirement that, before a motion for summary judgment may be granted, all discovery must be complete. Rule 56 provides that "[a] party against whom a claim, counterclaim, or cross-claim is asserted ... may, *at any time,* move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof." Fed. R.Civ. P. 56(b) (emphasis added). It is within a courts' discretion to reject a party's contention that more discovery was appropriate. *See Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.,* 769 F.2d 919, 926 (2d Cir. 1985).

■ Furthermore, there is no indication that additional discovery would be beneficial to the plaintiff's case against the two defendants at issue here. Rival and Callahan's motion for summary judgment turns on a question of law; specifically, the issue is whether defendants are qualifiedly immune. The Magistrate Judge found that they were after viewing all of the evidence in the light most favorable to the plaintiff and with all permissible inferences drawn in his favor. In a summary judgment context, an opposing party's hope that further evidence may develop is an insufficient basis upon which to deny a motion. *See Gray v. Town of Darien,* 927 F.2d 69, 74 (2d Cir.), *cert. denied,* 502 U.S. 856, 112 S.Ct. 170, 116 L.Ed.2d 133 (1991). Thus, it was not an abuse of discretion for the Magistrate Judge to grant summary judgment.

## *Plaintiff's Objection Nos. 3 & 6*

Plaintiff also claims that the Magistrate Judge erred in finding that defendants, at least with respect to the issue of whether they personally violated Segreto's constitutional rights, did not act under the color of state law, as is required to sustain a claim under § 1983. He argues that he made sufficient allegations to support a finding that the "actions taken by Rival and Callahan ... were undertaken with authority vested in them by the state and ... use[d] their supervisory power to harass plaintiff or direct others to harass him." Plaintiff's Objection, p. 6. We disagree.

---

**2.** We note that plaintiff made this objection, not in opposition to defendants' motion for summary judgment, but after the Magistrate Judge made an interim ruling on the matter.

"[I]t is by now axiomatic that under color of state law means pretense of law and that acts of officers in the ambit of their personal pursuits are plainly excluded." *Pitchell v. Callan,* 13 F.3d 545, 547–8 (2d Cir.1994)(internal quotation marks omitted), *citing, Screws v. United States,* 325 U.S. 91, 111, 65 S.Ct. 1031, 1040, 89 L.Ed. 1495 (1945). A person acts under the color of state law when he engages in conduct that is related to state authority conferred on that person, even if the authority does not in fact permit such conduct. *Murphy v. Chicago Transit Authority,* 638 F.Supp. 464, 467–68 (N.D.Ill. 1986).

While defendants in this case, as well as the plaintiff, are police officers, and it is possible to infer that defendants were in a position to engage in the conduct forming the basis of plaintiff's allegations because their jobs enabled them to have frequent encounters with him at their place of employment, these facts do not compel the conclusion that defendants acted under the color of state law. *See Polk County v. Dodson,* 454 U.S. 312, 321, 102 S.Ct. 445, 451, 70 L.Ed.2d 509 (1981) (although employment relationship is a relevant factor, it is insufficient by itself to establish that conduct was state action). Such a conclusion is warranted only where the alleged conduct is related to the duties and powers inherent in the actor's job. *Kern v. City of Rochester,* 93 F.3d 38, 43 (2d Cir. 1996) (*citing, West v. Atkins,* 487 U.S. 42, 49, 108 S.Ct. 2250, 2255, 101 L.Ed.2d 40 (1988)), *cert. denied,* —— U.S. ——, 117 S.Ct. 1335, 137 L.Ed.2d 494 (1997). That simply is not the case here.

Moreover, while plaintiff takes issue with the Magistrate Judge's characterization of the defendants' conduct as "personal in nature," we find nothing wrong with this description. The conduct complained of, if it occurred, certainly is reprehensible, and our decision is not meant to condone such behavior. That being said, however, there is nothing in the evidence to suggest that defendants' actions had anything to do with the nature of their jobs as police officers or were related in any way to the real or apparent authority of the police department. Accordingly, summary judgment properly was granted on plaintiff's § 1983 claim that these defendants violated his constitutional rights.

*Plaintiff's Objection No. 7*

Plaintiff also contends that the Magistrate Judge incorrectly applied *Anderson v. Branen,* 17 F.3d 552, 557 (2d Cir.1994) and *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) to the issue of whether defendants were entitled to qualified immunity for failing to intervene to prevent Sergeant Murphy from assaulting Segreto. Plaintiff argues that because the Magistrate Judge found that "[i]t is unresolved and open to dispute whether the conduct attributed to Murphy violated Segreto's federal constitutional rights," summary judgment should not have been entered in defendants Rival and Callahan's favor.

■ Summary judgment on the basis of qualified immunity is appropriate if the court finds that the rights asserted were not clearly established or that, viewing the evidence in the light most favorable to the plaintiff and with all permissible inferences drawn in his favor, no rational jury could conclude that it was objectively unreasonable for the defendants to believe that they were acting in a fashion that did not violate a clearly established right. *Williams v. Greifinger,* 97 F.3d 699, 703 (2d Cir.1996). Thus, the issue before the Magistrate Judge was whether any rational jury could find that defendants Rival and Callahan's, not defendant Murphy's, conduct was objectively unreasonable given the circumstances of the case.

With respect to this issue, the Magistrate Judge found that "[t]he duty of police officers to intervene to counteract a fellow officer under the circumstances alleged here was not clearly established, especially when Sgt. Murphy's conduct might not have occurred under color of law, or where because of the relationship between Murphy and Segreto, the officers might not have recognized the actions as constitutional violations, or where, because Murphy was senior to them in the chain of command, intervention might not have afforded a realistic opportunity to prevent the harm." Magistrate Judge's Ruling, p. 564.

A finding that the conduct attributed to Murphy violated plaintiff's federal constitutional rights would not alter this result since the Magistrate Judge found that Rival and Callahan's duty to intervene under these circumstances was, in any event, unclear. In other words, while this fact may be disputed, it is not material to the Magistrate Judge's determination that *these* defendants were qualifiedly immune. Therefore, summary judgment in defendants' favor on plaintiff's § 1983 cause of action based on a duty to intervene was proper.

*Plaintiff's Objections Nos. 4, 5 & 8*

The remaining arguments raised by plaintiff in his opposition do not merit discussion. Essentially, plaintiff claims error by mischaracterizing the Magistrate Judge's ruling. However, contrary to plaintiff's assertions, it is clear from a careful reading of her ruling that the Magistrate Judge treated Rival and Callahan as plaintiff's supervisors *and* co-workers, *see* Magistrate Judge's ruling, p. 559 n. 6; addressed the issue of defendants' liability for failing to intervene in the assault of plaintiff by codefendant Murphy; and correctly found that the "record reflects that the relationship between Segreto and Murphy was not always hostile, and not purely professional," Magistrate Judge's ruling, p. 564 n. 11.

## CONCLUSION

For the reasons discussed above, we ratify and adopt the Magistrate Judge's recommended ruling and GRANT defendants' motion for summary judgment.

1. The Complaint also raises pendent state law claims under Connecticut General Statutes Sections 46a–58, 46a–60 46a–70, 46a–71, 46a–81c and Article First, Sections One, Seven, Nine, Ten and Twenty of the Connecticut Constitution.

2. Consideration of that motion was deferred while all of the parties engaged in protracted settlement discussions, interspersed with discovery which the Court believed might be relevant to the settlement process. Those settlement discussions reached an impasse in late August, 1996, and the Court proceeded to consider the Rival/Callahan summary judgment motion.

## RULING ON MOTION FOR SUMMARY JUDGMENT

FITZSIMMONS, United States Magistrate Judge.

The plaintiff, Richard Segreto, brings this action pursuant to Title 42, U.S.C., §§ 1983, 1985 and 2000e, and the Fourth and Fourteenth Amendments to the United States Constitution.[1] The defendants are Kenneth Kirschner, David Ogle, James Tracy, Anthony Murphy, Charles Rival and Lawrence Callahan. A Motion for Summary Judgment [Doc. # 56] was filed on January 12, 1996 by defendants Charles Rival and Lawrence Callahan, whose claims are the only ones addressed in this opinion.[2]

On September 26, 1996, plaintiff filed a Motion for Extension of Time [Doc. # 125] to complete discovery and respond to the Rival/Callahan Motion for Summary Judgment. An Interim Ruling on Summary Judgment [Doc. # 126] was filed on September 26, 1996. The parties filed responses to this Court's Interim Ruling [Doc. # # 126 and 128]. Oral argument was held on October 7, 1996. [Doc. # 129].

For the following reasons, defendants Rival and Callahan's Motion for Summary Judgment [**Doc. # 56**] is **GRANTED.**

### BACKGROUND

For purposes of this motion, the Court accepts the following facts as true.[3]

Segreto is a police officer in the Capitol Police Department. He was hired in July of 1988. In the fall of 1988, he dated a female Capitol police officer. Sergeant Anthony

3. In response to Rival and Callahan's Motion for Summary Judgment, Segreto relies on his affidavit, defendants' admissions, the pleadings, and unsworn statements in both the state police report and the legislative report. No opposing affidavits were submitted by plaintiff.

The Court has considered defendants' Motion for Summary Judgment [Doc. # 56], Memorandum in Support [Doc. # 57], 9(c) Statement of Undisputed Facts, Plaintiff's Memorandum in Opposition [Doc. # 66], defendants' reply [Doc. # 67], defendants' Supplemental Memorandum [Doc. # 123], plaintiff's Response to Interim Ruling [Doc. # 126], and defendants' reply to plaintiff's response [Doc. # 128].

Murphy[4] learned that Segreto did not have sexual intercourse with the woman and began to harass and intimidate [him] because, according to Segreto, Murphy believed he was a homosexual.[5] Murphy referred to Segreto as "Fag," "Fagio," "Jimmy The Woman," and "J.T.W." Rival has called Segreto "J.T.W." or "J.T." Callahan has called Segreto "Jimmy." On one occasion Segreto was characterized as a homosexual with "AIDS." On other occasions, posters with Segreto's picture that portrayed Segreto as a homosexual were displayed in the office.

In 1989, a departmental anniversary party was held in Plainville, Connecticut, which the defendants Murphy, Rival[6] and Callahan,[7] as well as other Capitol Police officers attended. At the party Segreto was hung upside down by unidentified officers who then attempted to stuff his head in a urinal.

At a Christmas party in December of 1989, Murphy directed Capitol Police Officer Robert Bates to handcuff Segreto and drag him across the dance floor while other people were dancing. Other capitol police officers observed this incident; however, Rival and Callahan are not alleged to have been at this party.

In late 1993, Murphy began to hit Segreto with a caning stick. Murphy named the stick the "Segreto Beat Me Stick" and hit Segreto on numerous occasions in the presence of Rival and Callahan. Segreto was hit hard enough that it hurt and told Murphy on several occasions to stop. In May of 1994, Rival drafted and presented to Segreto, on behalf of the Capitol Police, a certificate for getting hit with the stick.[8]

In March of 1995, Segreto told two fellow officers that he was depressed and could not take it any more and he felt like shooting himself with his handgun. Segreto then went into Murphy's office and took the two caning sticks as well as a file in Murphy's desk containing posters with Segreto's picture on them.

This lawsuit was filed in March of 1995. The complaint does not distinguish separate causes of action against particular defendants. This Motion for Summary Judgment is premised in part on qualified immunity and on the argument that plaintiff has failed to demonstrate that defendants were acting under color of state law.

### STANDARD

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. Fed. R. of Civ. P. 56(c). To avoid summary judgment, the plaintiff must proffer "concrete evidence from which a reasonable jury could return a verdict in its favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). A court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact...." *Miner v. Glens Falls,* 999 F.2d 655, 661 (2d Cir.1993) (citation omitted). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Aldrich v. Randolph Cent. Sch. District,* 963 F.2d 520, 523 (2d Cir.1992) (quoting *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510), *cert. denied,* 506 U.S. 965, 113 S.Ct. 440, 121 L.Ed.2d 359 (1990). After discovery, if the non-moving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

**4.** Murphy was the Chief of the State Capitol Police Department.

**5.** It is undisputed that Segreto is a heterosexual.

**6.** Rival was the Executive Officer in the Capitol Police and he reported directly to Murphy. For purposes of summary judgment Rival and Calla-

han stipulate that they were plaintiff's supervisors and co-workers [Doc. # 128 at 2].

**7.** Callahan was one of two supervisors in the Capitol Police and reported directly to Murphy.

**8.** *See* Defendants' Stipulation of Fact [Doc. # 128 at 2].

The court resolves "all ambiguities and draw[s] all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." *Aldrich,* 963 F.2d at 523. Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.), *cert. denied,* 502 U.S. 849, 112 S:Ct. 152 116 L.Ed.2d 117 (1991). *See also Suburban Propane v. Proctor Gas, Inc.,* 953 F.2d 780, 788 (2d Cir.1992).

## DISCUSSION

### I. TITLE VII

#### Claims Against Individual Defendants

■ Our Court of Appeals holds that "individual defendants with supervisory control over a plaintiff may not be held personally liable under Title VII." *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1313 (2d Cir.1995); *Jungels v. State University College of New York,* 922 F.Supp. 779, 782 (W.D.N.Y.1996) (applying *Tomka* holding to all Title VII cases).

Accordingly, summary judgment is GRANTED as to defendants Callahan and Rival in their individual capacities.

#### Claims Against Defendants As Agents of the Employer

■ "The proper method for a plaintiff to recover under Title VII is by suing the employer, either by naming the supervisory employees as agents of the employer or by naming the employer directly." *Jungels,* 922 F.Supp. at 782 (quoting *Busby v. City of Orlando,* 931 F.2d 764, 772 (11th Cir.1991)). An employer is defined as "a person engaged in an industry affecting commerce ... and any agent of such person." 42 U.S.C. § 2000e(b). Plaintiff does not make an allegation against the Capitol Police Department or the State of Connecticut as employers and does not specifically allege that defendants Callahan and Rival were acting as the supervisory agents of the employer. While these defendants concede that they had supervisory authority over plaintiff, those with supervisory authority over these defendants, namely Kenneth Kirschner, David Ogle and James Tracy as well as Anthony Murphy, are also named as defendants in their official capacities [Compl. ¶¶ 13, 16, 18, 19, 42].

Thus, to the extent plaintiff seeks to state a cause of action under Title VII against his employer, it is unnecessary for the Court to determine if Rival and Callahan were "agents" of the employer under Title VII; and their continuation in the case in their official capacities under Title VII is unnecessary also.

Accordingly, summary judgment is GRANTED for defendants Rival and Callahan on the claims raised against them in their official capacity under Title VII.

### II. CLAIMS UNDER 42 U.S.C. § 1983

Defendants rely primarily on three grounds in seeking summary judgment on plaintiff's Section 1983 claims. First, plaintiff has not shown that defendants were acting under "color of state law." Second, qualified immunity shields them from liability. Last, plaintiff has not shown that defendants violated any civil right secured by the Constitution or laws of the United States.

Section 1983 states, in relevant part, that:

Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State ... subjects or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law. . . .

In order to state a claim under Section 1983, a plaintiff must allege a violation of rights secured by the Constitution or laws of the United States and show that the violation was committed by a person acting under the color of state law. *See Greenwich Citizens Committee, Inc. v. Counties of Warren and Washington Indus. Dev. Agency,* 77 F.3d 26, 29–30 (2d Cir.1996).

#### 1. Color of State Law/Personal Violations

Defendants contend that, even accepting plaintiff's allegations as true, they were not acting under color of state law when these acts occurred. Plaintiff argues that the evidence shows that "Rival and Callahan actively participated [in conduct], while on duty, by virtue of their authority." [Doc. # 66 at 11]. Where, as here, the acts complained of are

committed by an officer against a fellow officer, the analysis is more complicated than simply determining the offender's duty status.

Liberally construed, Segreto's complaint alleges that Rival and Callahan were present at one party in 1989 where other officers hung Segreto upside down and attempted to stuff his head in a urinal, that they were present on several occasions when Murphy hit Segreto with a caning stick in the Capitol police offices, and that in May of 1994, Rival drafted and presented to Segreto, on behalf of the police, a certificate for getting hit with the stick. It is also stipulated that Rival called the plaintiff "J.T.W." or "J.T.," and Callahan called him "Jimmy."

Additionally, Segreto alleges that Rival and Callahan, knowing of the violation of plaintiff's constitutional rights by Anthony Murphy, failed to intervene to prevent those violations. The Court will consider the issue of whether Rival and Callahan were acting under color of state law when they did the actions which are alleged to have personally violated Segreto's constitutional rights separately from the issue of Rival and Callahan's obligation to intervene to prevent Murphy from violating Segreto's civil rights.

"The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 49, 108 S.Ct. 2250, 2255, 101 L.Ed.2d 40 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368 (1941)). The Supreme Court recognizes that mere employment by the state, although relevant to a determination of whether a defendant's actions are taken under color of state law, is not conclusive. *Polk County v. Dodson*, 454 U.S. 312, 321, 102 S.Ct. 445, 451, 70 L.Ed.2d 509 (1981); *Kern v. City of Rochester*, 93 F.3d 38, 43 (2d Cir.1996) (citing *West*, the Court found plaintiff failed to demonstrate that defendant "exercised power possessed by virtue of state law and made possible only because wrongdoer was clothed with the authority of state law."); *Pitchell v. Callan*, 13 F.3d 545, 548

(2d Cir.1994) (A court must consider "the nature of the officer's act, not simply his duty status.") (citation omitted); *Murphy v. Chicago Transit Authority*, 638 F.Supp. 464, 468 (N.D.Ill.1986) (The actions "must be related to the state authority conferred on the actor, even though the actions are not actually permitted by the authority."). "It is by now axiomatic that under color of state law means pretense of law and the acts of officers in the ambit of their personal pursuits are plainly excluded." *Pitchell*, 13 F.3d at 547–48 (citing *Screws v. United States*, 325 U.S. 91, 111, 65 S.Ct. 1031, 1039–40, 89 L.Ed. 1495 (1945)).

Liability may be found where a police officer, albeit off-duty, nonetheless invokes the real or apparent power of the police department. *See Rivera v. La Porte*, 896 F.2d 691, 695–96 (2d Cir.1990). "Courts look to the nature of the officer's act, not simply his duty status." *Pitchell*, 13 F.3d at 548. "[W]hile it is clear that 'personal pursuits' of police officers do not give rise to Section 1983 liability, there is no bright line test for distinguishing 'personal pursuits' from activities taken under color of state law." *Id.*, 13 F.3d at 548.

There is clearly a distinction "when the actions complained of were committed while the defendants were purporting to act under the authority vested in them by the state, or were otherwise made possible because of the privileges of their employment," for example, where "a judge is figuratively and literally clothed in state power, and the officers were acting behind badges." *Hughes v. Halifax County School Bd.*, 855 F.2d 183, 186–87 (4th Cir.1988), *cert. denied*, 488 U.S. 1042, 109 S.Ct. 867, 102 L.Ed.2d 991 (1989). "Private violence—even private violence engaged in by one who happens to work for the state—has different legal ramifications than violence attributable to state action." *Martinez v. Colon*, 54 F.3d 980, 985 (1st Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 515, 133 L.Ed.2d 423 (1995). "In short, it appears that a person acts 'under color of state law' when he engages in conduct that is related to state authority conferred on the person, even though the authority does not in fact permit the conduct." *Murphy*, 638 F.Supp. at 468. Applying these general

standards to this case, and reading plaintiff's allegations liberally, the Court finds as follows.

■ Here, there is no dispute that defendants Rival and Callahan were plaintiff's supervisors and were employed by the State. Plaintiff does not, however, allege that the actions he complains of were undertaken with the authority vested in the defendants by the state, or that they used their supervisory power to harass him, or direct others to harass him. Nor is there any evidence that Segreto appealed to their authority to stop the harassment by others of which he complains.

■ It is possible to infer that defendants were in a position to engage in abusive or offensive conduct toward plaintiff because their jobs enabled them to have frequent encounters with him at their place of employment. "This conclusion, however, does not mean that defendants' actions were pursued under color of state law." *Id.* As the case law reveals, "actions taken under color of state law must be related to the state authority conferred on the actor, even though the actions are not actually permitted by the authority." *Id.* Status as a police officer, or conduct occurring at work, is simply not enough. Here, the alleged conduct was not in any way related to the duties and powers inherent in Rival and Callahan's jobs. However tortious their actions, the defendants were not acting under color of state law as required for liability under § 1983.

Several courts have reached similar legal conclusions under analogous factual circumstances. In *Delcambre v. Delcambre,* 635 F.2d 407 (5th Cir.1981)(per curiam), the chief of police who assaulted his sister-in-law on the premises of the municipal police station while on duty was not liable under § 1983. The Fifth Circuit affirmed the lower court's finding that defendant was not acting under color of state law. Although the chief of

police was on duty, the parties argued over family and political matters and plaintiff was neither arrested nor threatened with arrest. *Id.,* 635 F.2d at 408; *Pitchell,* 13 F.3d at 548 (Holding that an off-duty police officer was not acting under color of state law when he shot a person in his home because he was "not acting in accordance with police regulation ... nor was he invoking the authority of the police department....").

In *Murphy v. Chicago Transit Authority,* 638 F.Supp. 464, 468 (N.D.Ill.1986), an attorney employed by the Chicago Transit Authority sued fellow employees under Section 1983 for sexual harassment at her workplace. The court found that "the humiliating comments and harassing behavior had nothing to do with, and bore no similarity to, the nature of the staff attorney job." *Id.* Rather, the job was limited to representing the transit authority in legal matters and "did not and could not give the illusion that sexual harassment, albeit during working hours, somehow related to the nature of that job." *Id.*

In *Hughes v. Halifax County School Bd.,* 855 F.2d 183, 186 (4th Cir.1988), *cert. denied,* 488 U.S. 1042, 109 S.Ct. 867, 102 L.Ed.2d 991 (1989), fellow county maintenance workers staged a mock hanging of plaintiff in alleged retaliation for plaintiff's participation in a grand jury inquiry of the school board.[9] The court concluded that harassment by fellow school district employees was not under color of law because defendants did not purport to act under authority vested in them by the state. The Fourth Circuit cautioned against a broad reading of "state action" where "any employee of any state who commits a tort has potentially violated § 1983 ... [w]e cannot endorse this result." *Id.*

*Martinez v. Colon,* 54 F.3d 980 (1st Cir.), *cert. denied,* — U.S. ——, 116 S.Ct. 515, 133 L.Ed.2d 423 (1995), involved a police officer who was verbally and physically taunted[10] and then shot in the groin by a fellow police officer who was on duty. The events took

---

**9.** Specifically, plaintiff argued that "he was assaulted, battered, and subjected to intentional emotional distress under color of state law because he was accosted by county employees with retaliation in their eyes, on county land, with a county-owned rope, during work hours." *Hughes,* 855 F.2d at 186.

**10.** The taunting included defendant calling plaintiff a "pretty boy," threatening to "blow away" plaintiff's penis, holding a gun to his stomach and cocking the hammer, and ripping plaintiff's undershirt.

place in the parking lot of the police station and inside the station house. The Court held that

> plaintiff ha[d] not produced any evidence tending to show that this tormentor, when brandishing the firearm, was exercising or purporting to exercise police power. In the absence of any additional indicia of state action, we believe that the unauthorized use of government-issue weapon is too attenuated a link to hold together a section 1983 claim.

*Id.* at 988.

The Court further commented that if plaintiff had "been a civilian rather than a fellow officer, the significance of [defendant officer's] uniform and weapon for purposes of the color-of-law determination might well have been greater." *Id.* at 988 n. 6.

> But when the victim is himself a fellow officer and the particular interaction between the two officers is of a distinctively personal nature, it can generally be assumed that the aggressor's official trappings, without more, will not lead the victim to believe that the aggressor in acting with the imprimatur of the state and, in turn, to forgo exercising legal rights.

*Id.*

Even accepting all of Segreto's allegations as true, the conduct alleged against Rival and Callahan was purely personal in nature, and Segreto unquestionably realized this; indeed, there is no evidence that Rival and Callahan's conduct invoked the authority of their office. "Hazing of this sort, though reprehensible, is not action under color or pretense of law." *Martinez*, 54 F.3d at 987. Nor can it be said that Rival and Callahan's actions were "in any meaningful way related either to [their] official status or to the performance of [their] police duties." *Id.*

Accordingly, summary judgment is GRANTED to the defendants Rival and Callahan on the § 1983 claims that they personally violated plaintiff's constitutional rights. It is therefore unnecessary to reach the defendants' second and third claims that qualified immunity attaches to their actions or that the Constitution or laws of the United States were not violated by their actions.

2. *Qualified Immunity/Duty to Intervene*

Government officials are shielded from liability for damages on account of their performance of discretionary official functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). "The availability of the defense generally turns on the objective legal reasonableness of the allegedly unlawful official action, assessed in light of the legal rules that were clearly established at the time it was taken." *Ying Jing Gan v. City of New York,* 996 F.2d 522, 531 (2d Cir.1993) (quotations omitted). To determine whether a particular right was clearly established at the time defendants acted, a court should consider:

> (1) whether the right in question was defined with "reasonable specificity"; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.

*Jermosen v. Smith,* 945 F.2d 547, 550 (2d Cir.1991), *cert. denied,* 503 U.S. 962, 112 S.Ct. 1565, 118 L.Ed.2d 211 (1992).

Our Court of Appeals recognizes that "all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v. Branen,* 17 F.3d 552, 557 (2d Cir.), *reh'g denied,* 27 F.3d 29 (2d Cir.1994). (citations omitted). "An officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know ... that excessive force is being used," or "that any constitutional violation has been committed by a law enforcement official." *Id.* (citing *O'Neill v. Krzeminski,* 839 F.2d 9, 11 (2d Cir.1988)). "In order for liability to attach, there must

have been a realistic opportunity to intervene to prevent the harm from occurring." *Id.*

■ Plaintiff alleges that defendants Rival and Callahan violated § 1983 by failing to intervene to prevent Sgt. Murphy from assaulting him, sexually harassing him and otherwise violating his constitutional rights.

It is unresolved and open to dispute whether the conduct attributed to Murphy violated Segreto's federal constitutional rights. The duty of police officers to intervene to counteract a fellow officer under the circumstances alleged here was not clearly established, especially when Sgt. Murphy's conduct might not have occurred under color of law, or where because of the relationship between Murphy and Segreto,[11] the officers might not have recognized the actions as constitutional violations, or where, because Murphy was senior to them in the chain of command, intervention might not have afforded a realistic opportunity to prevent the harm.

As the First Circuit noted in *Martinez* in 1995, "the precise contours of the rule as it applies to onlooker officers are murky." *Martinez*, 54 F.3d at 989. It was objectively reasonable for defendants Rival and Callahan to fail to recognize that they had any duty to intervene, since under such circumstances the duty to intervene has not been clearly established. They are therefore entitled to qualified immunity and summary judgment on this cause of action under § 1983. *See Ying Jing Gan*, 996 F.2d 522.

---

**11.** The record reflects that the relationship between Segreto and Murphy was not always hostile, and not purely professional. For example, Rival stated

> Let me clarify what I observed. Rich [Segreto] and Tony [Murphy] has this running joke going, or so I thought. They would call each other names, joke around, and basically get involved in what you would refer to as "grabassing" around.

"I always viewed this as two guys who liked each other...." In fact, "[Murphy] dated for some time Rich Segreto's divorced mother." Rival states that Murphy and Segreto had serious discussions in private about "troubles [Segreto] was having with girlfriends...." "[Segreto] would always be asking [Murphy] to take him on fishing

---

### 3. *Title VII*

■ Our Court of Appeals holds that "a § 1983 claim is not precluded by a concurrent Title VII claim, when the former is based on substantive rights distinct from Title VII." *Saulpaugh v. Monroe Community Hospital*, 4 F.3d 134, 143 (2d Cir.1993) (quoting *Carrero v. New York City Housing Authority*, 890 F.2d at 576), *cert. denied*, 510 U.S. 1164, 114 S.Ct. 1189, 127 L.Ed.2d 539; *see also Gierlinger v. New York State Police*, 15 F.3d 32, 34 (2d Cir.1994). "A plaintiff cannot use Section 1983 to gain perceived advantages not available to a Title VII claimant, but he can assert a claim under Section 1983 if some other law other than Title VII is the source of the right alleged to have been denied." *Saulpaugh*, 4 F.3d at 143 (citations omitted).

Accordingly, to the extent that plaintiff asserts a § 1983 claim based on a statutory violation of Title VII against Rival and Callahan, it is precluded and they are entitled to summary judgment.

### III. *CLAIMS UNDER 42 U.S.C. § 1985*

■ In order to support a claim under 42 U.S.C. § 1985[12], a plaintiff must be a member of a protected class. *Gay Veterans Ass'n, Inc. v. American Legion–New York County Org.*, 621 F.Supp. 1510, 1515 (S.D.N.Y.1985) (citations omitted). Segreto alleges that the defendants conspired to violate his constitutional rights "by agreeing and by carrying out a pattern of outrageous conduct including sexual discrimination, assault and battery, defamation of character and intimidation...." [Compl. ¶¶ 20–21].

---

trips, or go out drinking with him." [Doc. # 57, Ex. A].

**12.** Section 1985(3) provides in pertinent part:

> If two or more persons ... conspire ... for the purpose of depriving ... any person or class of persons of the equal protection of the laws ... [and] if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

Since plaintiff is a white male heterosexual, no action under § 1985 can be maintained.

■ Under § 1985(3), the language requiring intent to deprive of equal protection of the laws "means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirator's action." *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). The term "class-based animus" has been narrowly construed to encompass animus directed toward those groups with "discrete, insular and immutable characteristics" comparable to race, national origin, and sex. *Gay Veterans Ass'n, Inc.,* 621 F.Supp. at 1515 (citations omitted). Section 1985(3) should only extend beyond its racial parameters where either the "courts designate the class in question a 'suspect' or 'quasi-suspect' classification requiring more exacting scrutiny," or where "Congress has indicated through legislation that the class require[s] special protection." *Schultz v. Sundberg,* 759 F.2d 714, 718 (9th Cir.1985). As a class, white heterosexual males are only entitled to "rational basis review" because they have not been afforded special protection by Congress or the courts.

Segreto contends that defendants' animus was based on homosexuality, even though it is undisputed that Segreto is not homosexual. Nevertheless, "courts have not designated homosexuals a 'suspect' or 'quasi suspect' classification so as to require more exacting scrutiny...." *DeSantis v. Pac. Tel. & Tel. Co., Inc.,* 608 F.2d 327, 333 (9th Cir.1979); *High Tech Gays v. Defense Ind. Sec. Clearance Office,* 895 F.2d 563, 574 (9th Cir.1990) ("homosexuals do not constitute a suspect or quasi-suspect class entitled to greater than rational basis scrutiny"); *Williamson v. A.G. Edwards and Sons, Inc.,* 876 F.2d 69, 70 (8th Cir.1989) ("Title VII does not prohibit discrimination against homosexuals"), *cert. denied,* 493 U.S. 1089, 110 S.Ct. 1158, 107 L.Ed.2d 1061 (1990); *David v. Local 801, Danbury Fire Fighters Ass'n,* 899 F.Supp. 78 (D.Conn.1995) (same); *Gay Veterans Ass'n. Inc.,* 621 F.Supp. at 1515–16 (same).

Consequently, white heterosexual males and homosexuals are not protected classes under Section 1985(3); thus, plaintiff's claims under this section must fail and defendants Rival and Callahan are entitled to summary judgment.

## IV. PENDENT STATE LAW CLAIMS

In addition to the Title VII and § 1983 claims, the complaint includes pendent state law claims including conspiracy to commit the state crimes of assault, threatening and reckless endangerment, promotion of a hostile work environment, state constitutional violations, and intentional infliction of emotional distress. Pendent jurisdiction is a doctrine of discretion; "its justification lies in considerations of judicial economy, convenience, and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims." *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *accord Morse v. University of Vermont,* 973 F.2d 122, 127 (2d Cir.1992); *Castellano v. Board of Trustees,* 937 F.2d 752, 758 (2d Cir.), *cert. denied,* 502 U.S. 941, 112 S.Ct. 378, 116 L.Ed.2d 329 (1991).

Generally, "where the federal claims are dismissed before trial ..., the state claims should be dismissed as well." *United Mine Workers,* 383 U.S. at 726, 86 S.Ct. at 1139; *Carnegie–Mellon University v. Cohill,* 484 U.S. 343, 350, 108 S.Ct. 614, 619, 98 L.Ed.2d 720 (1988); *see also Castellano,* 937 F.2d at 758; *Andreo v. Friedlander,* 651 F.Supp. 877, 883 (D.Conn.1986); *cf. Castellano,* 937 F.2d at 758 (pendent jurisdiction implicates comity concerns); *but cf. Finz v. Schlesinger,* 957 F.2d 78, 84 (2d Cir.) (where dismissal of a federal action involves findings related to state claim, court should address state issues); *cert. denied,* 506 U.S. 822, 113 S.Ct. 72, 121 L.Ed.2d 38 (1992).

Following these principles, the Court declines to exercise pendent jurisdiction over the state law claims.

## CONCLUSION

For the foregoing reasons, Rival and Callahan's motion for summary judgment [**Doc. # 56**] is **GRANTED.**

Any objections to this recommended ruling must be filed with the clerk of the court within ten (10) days of receipt of this order.

Failure to object within ten (10) days may preclude appellate review. *See* 28 U.S.C. Sec. 636(b)(1); Rules 72, 6(a) and 6(e) of the Federal Rules of Civil Procedure; Rule 2 of the Local Rules for United States Magistrates; *Small v. Secretary of H.H.S.,* 892 F.2d 15 (2d Cir.1989).

March 14, 1997.