ANDERSON and Grubb

v.

BRANEN et al.

No. 90 Civ. 7014 (RO).

United States District Court,
S.D. New York.

July 31, 1992.

Simpson Thacher & Bartlett (Joseph F. Tringali, of counsel), Nicholas Even, Lorey Hannon Rives, Susan Sawyer, American Civil Liberties Union Foundation, William B. Rubenstein, Ruth E. Harlow, New York Civil Liberties Union, Earl Ward, New York City, for plaintiff.

U.S. Dept. of Justice (R. Joseph Sher, of counsel), Stuart M. Gerson, Otto G. Obermaier, Helene M. Goldberg, Washington, D.C., for defendants.

## ENDORSED MEMORANDUM

OWEN, District Judge.

Plaintiffs instituted this action for damages and injunctive relief against three Special Agents of the United States Drug Enforcement Administration; they claim that having slightly tapped the agents' car with their motorcycle on November 16, 1988, the individual defendants assaulted them, subjected them to unwarranted, unreasonable and excessive beatings, and caused unjustifiable arrest and confinement, depriving them of their rights under the Fourth and Fifth Amendments because they are homosexuals.[1] Both men sustained injuries from the beatings they received. They allege that they committed no acts to provoke the agents. Plaintiffs were arrested and charged with misdemeanors.

Defendants Dennis Branen, Ross Kindestin and Ed Wisniefski move to dismiss all of the plaintiffs' claims other than those arising under the Fourth Amendment, on the grounds that the complaint fails to state a cause of action other than under the Fourth Amendment, and that even if plaintiffs do state a prima facie Fifth Amendment claim, defendants' qualified immunity bars that claim.

Plaintiffs allege that they were singled out for unreasonable treatment and abuse because they are gay. The Equal Protection clause of the Fourteenth Amendment prohibits any state from denying to any person within its jurisdiction the equal protection of the laws; this principle is applicable to federal government actions as a component of the Fifth Amendment Due Process clause.

Defendants contend that there can be no equal protection claim here be-

1. The complaint alleges:

On the evening of November 16, 1988, plaintiff Grubb drove by motorcycle to 211 West 61st Street, New York, New York, to pick up plaintiff Anderson from his job at that address. Upon arrival at that destination, plaintiff Grubb moved the motorcycle off the street and onto the sidewalk. The motorcycle tapped against a dark-colored automobile which was parked on the sidewalk in front of the building at 211 West 61st Street. While still seated on the motorcycle and still wearing his helmet, plaintiff Grubb was suddenly grabbed by one of the defendants, who was dressed in street clothes at the time. The defendant did not identify himself as an agent of the Drug Enforcement Administration. Without provocation of any kind, the defendant agent shoved plaintiff Grubb against the wall of the building, and began pulling and punching at plaintiff Grubb's helmet. Plaintiff Anderson, who had witnessed the foregoing events from the doorway of the building, came over to plaintiff Grubb and the defendant agent. Plaintiff Anderson was immediately seized by the other two defendant agents, who were also dressed in street clothes. Those two defendant agents did not identify themselves or the other defendant as agents of the Drug Enforcement Administration. Without provocation of any kind, those two defendant agents proceeded to beat plaintiff Anderson in the face, chest, back, abdomen and legs. Despite plaintiff Grubb's request that the defendants identify themselves, they refused to do so. Two of the defendants knocked plaintiff Grubb to the ground and continued to beat him, while the remaining defendant pushed plaintiff Anderson into the back seat of the dark-colored automobile and confined him there. Plaintiff Grubb was subsequently placed in handcuffs and confined in the front seat of the same automobile. Throughout the attack, the defendants shouted homophobic epithets at the plaintiffs in a derogatory and bigoted manner, calling them "faggots" and other derisive and offensive terms used to degrade homosexuals (paragraph numbers omitted).

cause the constitutional status of homosexuality is in flux. However, the lowest level of Equal Protection scrutiny mandates that the government action in question must be rationally related to a legitimate state purpose; there can be no legitimate state interest in "bare ... desire to harm a politically unpopular group...." *City of Cleburne v. Cleburne Living Center,* 473 U.S. 432, 447, 105 S.Ct. 3249, 3258, 87 L.Ed.2d 313 (1985), *citing United States Dept. of Agriculture v. Moreno,* 413 U.S. 528, 534, 93 S.Ct. 2821, 2825, 37 L.Ed.2d 782 (1973). *See also, Pruitt v. Cheney,* 943 F.2d 989, 994–95 (9th Cir.1991). An equal protection analysis of discriminatory acts against homosexuals must be conducted pursuant to a rational basis test. *Woodward v. United States,* 871 F.2d 1068, 1076 (Fed.Cir.1989), *cert. denied,* 494 U.S. 1003, 110 S.Ct. 1295, 108 L.Ed.2d 473 (1990); *High Tech Gays v. Defense Industrial Security Clearance Office,* 895 F.2d 563, 574 (9th Cir.1990). Thus, the denial of heightened scrutiny to discrimination against homosexuals "does not mean ... that any kind of negative state action against homosexuals would be constitutionally authorized. Laws or government practices must still, if challenged, pass the rational basis test of the equal protection clause." *Padula v. Webster,* 822 F.2d 97, 103–04 (D.C.Cir.1987).

■ Defendants assert that all claims arising from an instance of alleged excessive force must be litigated under the Fourth Amendment. They rely primarily upon *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), which holds that claims arising from alleged "excessive force in the course of making an arrest, investigatory stop, or other 'seizure' ... are properly analyzed under the Fourth Amendment's 'objective reasonableness' standard." *Id.* at 388, 109 S.Ct. at 1867, in making this assertion. Thus, the plaintiffs bring their excessive force claims under the Fourth Amendment pursuant to the dictates of *Graham.* However, claims of discrimination and Equal Protection violation arise under the Fifth Amendment, and are completely separate from the Fourth Amendment excessive force claim. If the harassment and arrest would not have oc-

curred but for the DEA agents' alleged hostility against the plaintiffs' homosexuality, then plaintiffs may state an Equal Protection claim regardless of the propriety of the arrest and the reasonableness of the use of force. *See Tanner v. Heise,* 879 F.2d 572, 580 n. 5 (9th Cir.1989), *citing Yick Wo v. Hopkins,* 118 U.S. 356, 373–74, 6 S.Ct. 1064, 1073, 30 L.Ed. 220 (1886). Each constitutional claim must be judged by reference to its own specific constitutional standard. *Johnson v. Morel,* 876 F.2d 477, 479 (5th Cir.1989).

■ With respect to the defendants' qualified immunity claim, such a defense may succeed only upon a showing that defendants' conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). *See also, Liffiton v. Keuker,* 850 F.2d 73, 76 (2d Cir.1988). The test is not a subjective one, but rather is an objective, reasonable person standard. Federal officials are charged with knowledge of constitutional developments at the time of the alleged violation; the contours of the clearly established right infringed must be "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). Defendants claim that the status of protection afforded to homosexuality by the constitution is in flux, at best, and that moreover, there is no constitutional limitation whatsoever barring federal officials from using language demeaning individuals' sexual preferences. Regardless of the level of scrutiny afforded to the status of homosexuality under the Equal Protection clause, federal agents can be presumed to have knowledge that apart from epithets, harassment, unprovoked assault and unjustified arrest on account of perceived membership in a particular class of individuals is a violation of constitutional rights, should it have occurred as plaintiffs allege.

Accordingly, defendants' motion to dismiss the plaintiffs' Fifth Amendment claims is denied.