David W. MARTIN, Plaintiff,

v.

**NEW YORK STATE DEPARTMENT OF CORRECTIONAL SERVICES, Law Enforcement Officers Union Council 82 AFSCME AFL—CIO, and Dominic J. Mantello, William J. Connolly, Carol Nuite and Robert Vanderbeck, Individually, Defendants.**

Civil No. 99–CV–1364.

United States District Court,
N.D. New York.

June 30, 2000.

Susan S. Dautel, Deily, Testa Law Firm, Albany, NY, for David W. Martin.

Risa L. Viglucci, Office of Attorney General, State of New York, Albany, NY, for New York State Department of Correctional Services, Dominic Mantello, William J. Connolly, Carol Nuite, Robert Vanderbeck.

Meredith H. Savitt Michael G. Weisberg Hite, Casey Law Firm, Albany, NY, for Law Enforcement Officers Union Council 82, AFSCME AFL-CIO.

## MEMORANDUM DECISION AND ORDER

RALPH W. SMITH, Jr., United States Magistrate Judge.

This is a civil action for damages for sexual discrimination, retaliation, conspiracy to discriminate, and breach of duty of fair representation brought pursuant to 42 U.S.C. § 1985, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., and New York state law.[1] The parties have consented to have the undersigned conduct any and all further proceedings in this case, including the entry of final judgment, in accordance with 28 U.S.C. § 636(c). Presently before the Court is the motion of Defendant Law Enforcement Officers Union Council 82 AFSCME AFL—CIO for summary judgment (hereinafter the "Motion"). For the reasons set forth below, the Court grants Defendant's Motion in part and denies it in part.

## I. Standard of Review

Pursuant to Fed.R.Civ.P. 56(c), a court may grant a party's motion for summary judgment only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Chertkova v. Connecticut Gen. Life Ins. Co., 92 F.3d 81, 86 (2d Cir.1996). When analyzing the motion, the court's function "is not to weigh the evidence, make credibility determinations or resolve issues of

fact, but rather to determine whether, drawing all reasonable inferences from the evidence presented in favor of the non-moving party, a fair-minded jury could find in the non-moving party's favor." Beatie v. City of New York, 123 F.3d 707, 710–11 (2d Cir.1997) (citing United States v. Rem, 38 F.3d 634, 644 (2d Cir.1994); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The moving party bears the initial burden of "informing the ... court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323, 106 S.Ct. 2548. Once the moving party satisfies this standard, the burden shifts to the non-moving party to set forth specific facts indicating that genuine issues of material fact exist. Cifarelli v. Village of Babylon, 93 F.3d 47, 51 (2d Cir.1996). In opposing the motion, the non-moving party may not merely rely upon the pleadings, but "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Where the evidence in the record could reasonably support a verdict in favor of the non-moving party, the court must deny the moving party's motion. Beatie, 123 F.3d at 711 (citing Anderson, 477 U.S. at 252, 106 S.Ct. 2505). However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," the Court will grant the moving party's motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## II. Background

Construing the evidence in the light most favorable to Plaintiff, the facts are as follows. Plaintiff began his employment with the New York State Department of Correctional Services (hereinafter

---

1. Plaintiff also seeks an award of attorneys' fees pursuant to 42 U.S.C. § 1988(b).

"DOCS") as a correction officer at the Coxsackie Correctional Facility (hereinafter "Coxsackie") in December 1992. About six months later, Plaintiff's co-workers began a persistent campaign of verbally harassing and abusing him. An admitted homosexual, Plaintiff was routinely called names such as "faggot," "pervert," "homo," and "queer." Plaintiff's co-workers often made derogatory comments to Plaintiff and mistreated him on the basis of his homosexuality, but when Plaintiff complained to his supervisors, no action was taken. In addition, Plaintiff's supervisors contributed to the harassing environment by requiring Plaintiff to submit more documentation than his co-workers whenever he took medical leave and, at one point, by ordering that Plaintiff's personal firearm be confiscated.

When it became clear to Plaintiff that his supervisors at Coxsackie were unwilling to address or resolve his grievances, he sought assistance from Defendant, which was required to represent him under the terms of the Collective Bargaining Agreement that it had executed with DOCS. In response, Defendant's representatives failed to act on Plaintiff's claims and repeatedly told him that his claims were stupid. In contrast to other employees who sought representation from Defendant, Plaintiff was required to draft his grievances himself and had to plead with Defendant to take any action on his behalf. Moreover, at one point, Plaintiff overheard one of Defendant's attorneys, who was supposed to be representing him, refer to him as "David Martin, the faggot."

When Plaintiff became disenchanted with the environment in which he was forced to work and quality of Defendant's representation of him in the pursuit of his grievances, he filed Charges of Discrimination with the Equal Employment Opportunity Commission. Upon receiving notice of his right to sue, Plaintiff filed suit in federal court. In addition to the claims that Plaintiff brings against the other Defendants in the case, Plaintiff sues Defendant on the grounds that it violated his federal and state civil rights, conspired with the other Defendants to deprive him of his equal protection rights, and breached its duty of fair representation. The Court addresses each of these grounds below.

## III. *Discussion*

### A. Plaintiff's Civil Rights Claims

■ In his complaint, Plaintiff alleges that Defendant discriminated and retaliated against him, in violation of his rights under Title VII, as amended, 42 U.S.C. §§ 2000e–2(c) and 2000e–3(a), and the New York Human Rights Law (the "HRL"), N.Y.Exec.Law § 296(1)(c), (e). It is well-settled that claims brought pursuant to the Human Rights Law are evaluated under an identical standard as those brought pursuant to Title VII. *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1304 n. 4 (2d Cir.1995), abrogated on other grounds by *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998) (citations omitted). Accordingly, the Court will evaluate Plaintiff's federal and state civil rights claims simultaneously and with reference to both federal and state law.

#### 1. *Defendant's Discriminatory Conduct*

■ Title VII and the HRL make it unlawful for a labor organization to discriminate against any individual because of that individual's sex. 42 U.S.C. § 2000e–2(c)(1); N.Y.Exec.Law § 296(1)(c). Although there are two forms of sexual harassment, quid pro quo harassment and hostile work environment harassment, *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 65, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), only hostile work environment harassment is at issue here. To prevail on this claim, Plaintiff must show that: (1) Defendant breached its duty of fair representation by allowing an alleged breach of the Collective Bargaining Agreement to stand uncorrected; and (2) Defendant's actions were motivated by animus toward a protected group. *Badlam v. Reynolds*

*Metals Co.*, 46 F.Supp.2d 187, 199 (N.D.N.Y.1999) (citations omitted). Further, a plaintiff need not show that the harassment involved sexual advances or other explicitly sexual conduct. *Galdieri–Ambrosini v. National Realty & Dev. Corp.*, 136 F.3d 276, 289 (2d Cir.1998). The plaintiff must demonstrate, however, that the harassing conduct was based on gender and that it was sufficiently severe or pervasive to create a hostile environment. *Id.* (citations omitted).

In its Motion, Defendant argues that Plaintiff's claims of discrimination under Title VII and the HRL should be dismissed for failure to satisfy the second prong of his prima facie case because neither statute recognizes sexual orientation as a protected class. It is true that, however desirable it is as a matter of policy to redress discrimination on the basis of sexual orientation, the Second Circuit has suggested that it is not actionable under current law. *DeCintio v. Westchester County Med. Ctr.*, 807 F.2d 304, 307 (2d Cir.1986) (citing with approval those cases that narrowly construe Title VII and hold inactionable non-traditional claims, such as those based on sexual orientation). Most other courts that have considered the issue agree that neither Title VII nor the HRL currently provides an avenue for relief based upon sexual orientation. *See, e.g., Higgins v. New Balance Athletic Shoe, Inc.*, 194 F.3d 252, 259 (1st Cir.1999) (no cause of action under Title VII); *Hopkins v. Baltimore Gas & Elec. Co.*, 77 F.3d 745, 751–52 & n. 3 (4th Cir.1996) (same); *Williamson v. A.G. Edwards & Sons, Inc.*, 876 F.2d 69, 70 (8th Cir.1989) (same); *Carrasco v. Lenox Hill Hosp.*, 2000 WL 520640, at *8 (S.D.N.Y. Apr.28, 2000) (same); *Simonton v. Runyon*, 50 F.Supp.2d 159, 163 (E.D.N.Y.1999) (same); *Nacinovich v. Tullet & Tokyo Forex, Inc.*, 257 A.D.2d 523, 524, 685 N.Y.S.2d 17, 18 (1st Dep't 1999)

(no cause of action under N.Y.Exec.Law § 296(1)); *Petri v. Bank of New York Co., Inc.*, 153 Misc.2d 426, 428–29, 582 N.Y.S.2d 608, 610 (N.Y.Sup.Ct.1992) (same). Thus, if sexual orientation were the only reason proffered by Plaintiff in support of his discrimination claims, the Court would be inclined to grant Defendant's Motion on these grounds.

 Plaintiff avers, however, that Defendant subjected him to degrading and humiliating treatment because he did not match the social stereotypes associated with his gender.[2] As the Second Circuit has noted, "[e]vidence of sexual stereotyping may provide proof that an . . . abusive environment was based on gender." *Galdieri–Ambrosini*, 136 F.3d at 289 (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 250–51, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989) (superseded by statute on other grounds)); *Lindahl v. Air France*, 930 F.2d 1434, 1439 (9th Cir.1991). As with other claims of sexual harassment, to prevail on this claim, the plaintiff must show that members of one sex are subjected to disadvantageous terms or conditions of employment to which members of the opposite sex are not exposed. *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 25, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (Ginsburg, J. concurring)).

The Second Circuit has analyzed a plaintiff's ability to prevail in a gender discrimination case based upon sexual stereotyping in a number of different factual scenarios. In a case based upon discrimination in promotion, the Second Circuit affirmed the dismissal of the complaint where the female plaintiff neither alleged that she had been denied a promotion in favor of a man nor provided evidence that she had ever

---

**2.** The Court notes that Plaintiff's Complaint alleges that Defendant discriminated against him on the basis of his sexual orientation. Am.Compl. ¶ 35. Only in his Opposition Memorandum and Affidavit in support thereof does Plaintiff allege for the first time that he

was subjected to such discriminatory treatment because he did not match the social stereotypes associated with his gender. Pl.'s Mem. of Law in Opp'n at 17; Martin Aff. in Opp'n ¶ 10.

competed with a male employee for a promotion. *Malarkey v. Texaco, Inc.*, 704 F.2d 674, 674–75 (2d Cir.1983) (per curiam). In another case, the Second Circuit affirmed the district court's granting of judgment as a matter of law where a female employee alleged that she was subjected to sexual discrimination based upon stereotype because there was no evidence that similarly situated men were subjected to different terms and conditions in employment than she. *Galdieri–Ambrosini*, 136 F.3d at 290–91. Finally, the Second Circuit recently rejected a male plaintiff's claim that his dismissal for sexual harassment violated Title VII because there was no evidence that any of his female co-workers had ever been accused of sexual harassment and, as such, that he had been treated differently than similarly situated female employees. *Vallone v. Lori's Natural Food Ctr., Inc.*, 1999 WL 1012668, at *2 (2d Cir. Oct.12, 1999).

The Southern District of New York has adopted this same reasoning and held that a female employee failed to establish a hostile work environment based on gender because, inter alia, there was no evidence that the male employee about whom she complained limited his offensive behavior to women. *Brennan v. Metropolitan Opera Ass'n, Inc.*, 1998 WL 193204, at *14 (S.D.N.Y. Apr.22, 1998), *aff'd*, 192 F.3d 310 (2d Cir.1999). By contrast, the Southern District held that a female plaintiff stated a prima facie case of discrimination under both Title VII and the HRL where she alleged that a male employee ignored the female employees during staff meetings while asking male employees to give presentations and opined that female employees were too aggressive. *Marks v. New York Univ.*, 61 F.Supp.2d 81, 97–98 (S.D.N.Y.1999). Similarly, the Western District of New York denied a defendant's motion to dismiss the complaint where the plaintiff alleged that her male co-workers had not been similarly ridiculed or made the subject of sexual conversations. *Samborski v. West Valley Nuclear Servs. Co., Inc.*, 1999 WL 1293351, at *3 (W.D.N.Y. Nov.24, 1999).

Synthesizing the above cases, the Court holds that, to prevail on his claims, Plaintiff must show that female DOCS employees were not subjected to the same manner of representation by Defendant as he was. Plaintiff does not do this. Plaintiff merely states that *he* was subjected to discriminatory conduct and that he believes that such conduct was motivated by the fact that he does not meet the stereotypes associated with his gender. Under the law of the Second Circuit, this allegation is insufficient to satisfy Plaintiff's burden of proof on his claim of gender discrimination. Because there is nothing, either in Plaintiff's Complaint or his Opposition Memorandum, to suggest that he was subjected to disadvantageous terms or conditions of representation to which female DOCS employees were not exposed, *Oncale*, 523 U.S. at 80, 118 S.Ct. 998, the Court accordingly grants Defendant's Motion with regard to Plaintiff's discrimination claims.

### 2. *Defendant's Retaliatory Conduct*

Both Title VII and the HRL also make it an unlawful employment practice for a labor union to retaliate against a member. 42 U.S.C. § 2000e–3(a); N.Y.Exec.Law § 296(1)(e). To establish a prima facie case of retaliation, a plaintiff must show that: (1) he was participating in a protected activity that was known to the union; (2) he suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action. *Badlam*, 46 F.Supp.2d at 204–05 (citations omitted). Once the plaintiff satisfies his prima facie case, the burden shifts to the defendant to demonstrate that there was a legitimate, non-retaliatory reason for the adverse employment action. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). If the labor union meets its burden, the plaintiff must then demonstrate that the labor union's actions were intentional and based upon the protected activity. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502,

508, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

In the present case, Defendant argues that Plaintiff fails to satisfy both the first and third elements of his prima facie case. With regard to the first element, Defendant claims that sexual orientation does not constitute a protected activity under either Title VII or the HRL. To satisfy this first element, however, a plaintiff need not show that the opposed conduct actually violated either statute, but rather that he reasonably and in good faith believed that it did. *Galdieri–Ambrosini*, 136 F.3d. at 292. Whether or not the plaintiff's belief was reasonable is viewed in light of the totality of the circumstances. *Id.* Thus, in order to establish this element, Plaintiff must show that he reasonably and in good faith believed that he was participating in an activity protected by Title VII and the HRL and that his participation was known to Defendant.

■ In reviewing Plaintiff's Opposition Memorandum, it is not clear whether Plaintiff alleges that his gender (and his failure to meet the stereotypes associated therewith) or his sexual orientation constitutes the necessary protected activity. *See* Pl.'s Mem. of Law in Opp'n at 19. The Court concludes that, if Plaintiff is proceeding on the theory that sexual stereotyping constitutes the protected activity, he has failed to put forth sufficient facts to show the reasonableness of his belief that Defendant was committing an unlawful employment practice on these grounds. *See Galdieri–Ambrosini*, 136 F.3d at 292 (court held unreasonable plaintiff's belief that she was being discriminated against on the basis of her gender because all of the co-workers whom she believed were treated more favorably were either other women or were men who held different positions than she); *Marks v. National Communications Ass'n, Inc.*, 72 F.Supp.2d 322, 336 (S.D.N.Y.1999) (court held unreasonable plaintiff's belief that she was being discriminated against on the basis of her gender where there was no evidence that she had ever complained about gender dis-

crimination to her employer). Because there is no evidence in the instant case that Plaintiff ever notified Defendant that he believed that he was being discriminated against because he did not meet the social stereotypes associated with his gender, there is no way that Defendant could have understood his complaints to be based upon sexual stereotyping. Accordingly, the Court finds that Plaintiff cannot satisfy the first element of his prima facie case on the grounds of sexual stereotyping.

■ By contrast, assuming that Plaintiff is proceeding on the theory that his sexual orientation constitutes the protected activity, the Court finds that he has put forth sufficient facts to show that he reasonably believed that Defendant was committing an unlawful employment practice. It is clear from the exhibits submitted by both parties in connection with the instant Motion that Plaintiff felt that he was being discriminated against on the basis of his sexual orientation and that these feelings were relayed to Defendant. *See, e.g.,* Affirmation of Maria B. Morris Ex. G (Sept. 1, 1998 letter from DOCS Deputy Dir. of the Bureau of Labor Relations to Defendant's Field Representative stating that Plaintiff felt that he was being discriminated against because of his sexual orientation); Martin Aff. in Opp'n Ex. B (July 20, 1998 letter from Plaintiff to Coxsackie Office of Diversity Management complaining about his co-workers' vulgar behavior towards him and speculating that their behavior was based upon their perception of his sexual orientation), Ex. G (Mar. 31, 1998 and May 27, 1998 letters from Plaintiff to Defendant stating that he had been discriminated and retaliated against by all levels of employees at Coxsackie on the basis of his known sexual orientation and that such treatment was continuing despite his complaints to his supervisors and to Defendant). Viewed in light of the totality of the circumstances, the Court finds that Plaintiff's belief that he was being discriminated against on the basis of his sexual orientation was both reasonable and in

good faith. Accordingly, Plaintiff satisfies the first element of his prima facie case.

■ With regard to the third element of Plaintiff's prima facie case, Defendant argues that Plaintiff fails to establish a causal link between his sexual orientation and any adverse employment actions that were taken against him. The Court disagrees. "A causal connection may be established either '*indirectly* by showing that the protected activity was followed closely by discriminatory treatment, or through other evidence such as disparate treatment of fellow employees who engaged in similar conduct, or *directly* through evidence of retaliatory animus directed against a plaintiff by the defendant.'" *Johnson v. Palma*, 931 F.2d 203, 207 (2d Cir.1991) (quoting *DeCintio*, 821 F.2d at 115 (citations omitted) (emphasis in original)). Viewing the evidence in the light most favorable to Plaintiff, the Court concludes that Plaintiff has set forth facts sufficient to establish an indirect causal connection between his sexual orientation and the adverse employment actions that he suffered.

Plaintiff asserts that, approximately six months after he began working as a corrections officer at Coxsackie, his co-workers began repeatedly harassing him on the basis of his sexual orientation.[3] Plaintiff complained to his superiors, but they took no corrective action. In addition, Plaintiff's supervisors unlawfully seized his personal firearm, forced him to submit documentation regarding medical absences that was more detailed than that required of his co-workers, and disciplined him when he failed to satisfy these heightened standards. Plaintiff states that similarly situated co-workers were not subjected to the same treatment. When Plaintiff sought Defendant's assistance, however, Defendant told him to stop complaining and would only take action on his behalf when he pleaded with it to do so. Although

Defendant was responsible for drafting grievances on behalf of its members and, in fact, did so for other members, Plaintiff was forced to draft his grievances by himself. Even after Defendant filed Plaintiff's grievances, it allowed one of his grievances to be closed without his consent and neglected others, which led to their dismissal. Finally, Defendant allowed the statute of limitations to lapse on some of his appeals, despite his numerous requests to proceed.

■ Taken together, these facts establish, first, that Plaintiff was subjected to different treatment than his co-workers at Coxsackie. Although Defendant cannot be held liable for this disparate treatment in and of itself, it may be held liable for implicitly condoning the treatment by failing to take action against it. *See Nweke v. Prudential Ins. Co. of America*, 25 F.Supp.2d 203, 220 (S.D.N.Y.1998) (holding that "a union's role in ratifying an employer's discriminatory practice could be sufficient to compel a finding of liability against it"); *United States v. City of Buffalo*, 457 F.Supp. 612, 639 (W.D.N.Y.1978) (holding that "[t]acit union acquiescence in an employer's discriminatory practices is sufficient to render it liable"). The facts show, second, that Defendant also subjected Plaintiff to treatment that differed from other union members. Pursuant to the standard set forth in *Johnson*, these facts are sufficient to satisfy the third prong of Plaintiff's prima facie case of retaliation.[4] Accordingly, the Court rejects Defendant's argument on these grounds.

Once Plaintiff establishes his prima facie case of retaliation, the burden shifts to Defendant to articulate a legitimate, nonretaliatory reason for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802–03, 93 S.Ct. 1817. Defendant has not proffered any such reason. Accordingly, the Court finds that Defendant

---

**3.** As noted above, Plaintiff does not specify the grounds upon which he claims to have been the victim of sexual discrimination. Construing the facts in the light most favorable to Plaintiff, however, the Court treats his

claim as one for discrimination based upon his sexual orientation.

**4.** This is particularly true, given the fact that no discovery in the case has yet occurred.

has not sustained its burden of proof on this issue and denies Defendant's Motion with regard to Plaintiff's retaliation claims.

## B. Plaintiff's Conspiracy Claim

 Section 1985 of Title 42, United States Code, provides in relevant part:

If two or more persons ... conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws ... in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3). To establish a prima facie case, Plaintiff must demonstrate (1) a conspiracy between Defendants; (2) the intent to deprive him of the equal protection of the laws or the equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; and (4) a deprivation of his rights. *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir.1999). Without considering the evidence proffered by Plaintiff in support of the other three elements, the Court finds that Plaintiff is unable to satisfy the second element of his prima facie case and accordingly dismisses his claim on these grounds.

 The Supreme Court has examined the history behind § 1985(3) and held that, to establish the second element of a prima facie case, a plaintiff must show "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971). In this context, "class-based animus" encompasses only those groups with discrete and immutable characteristics such as race, national origin, and sex. *Segreto v. Kirschner*, 977 F.Supp. 553, 565 (D.Conn. 1997); *Gay Veterans Ass'n, Inc. v. American Legion*, 621 F.Supp. 1510, 1515 (S.D.N.Y.1985); *Orshan v. Anker*, 489 F.Supp. 820, 823 (E.D.N.Y.1980). Indeed, this district has suggested that, because § 1985(3) was not intended to create general federal tort law, the statute should extend beyond its racial boundaries only when a class has been afforded suspect or quasi-suspect classification or when Congress has provided the class special protection. *Ryan v. City of Watertown*, 1998 WL 709798, at *8 (N.D.N.Y. Oct.7, 1998) (citing *David v. Local 801, Danury Fire Fighters Ass'n*, 899 F.Supp. 78, 80 (D.Conn.1995)). Under current law, however, homosexuality has only been afforded rational basis review, and it has not been given special protection by Congress. *Segreto*, 977 F.Supp. at 565; *David*, 899 F.Supp. at 80; *Anderson v. Branen*, 799 F.Supp. 1490, 1492 (S.D.N.Y.1992). Because homosexuality has not been afforded either suspect or quasi-suspect classification, under *Ryan*, Plaintiff cannot show that he is entitled to protection under § 1985(3).[5] Therefore, Plaintiff fails to establish this second element of his prima facie case, and the Court accordingly dismisses his § 1985 cause of action.

## C. Plaintiff's Fair Representation Claim

 Finally, Plaintiff alleges that Defendant breached its duty of fair representation. To establish this claim, Plaintiff

---

**5.** Other jurisdictions that have considered the issue have reached the same conclusion. *See, e.g., Preston v. Hughes*, 178 F.3d 1295, 1999 WL 107970, at *1 (6th Cir. Feb.10, 1999); *DeSantis v. Pacific Tel. & Tel. Co., Inc.*, 608 F.2d 327, 333 (9th Cir.1979); *Yost v. Board of Regents, Univ. of Md.*, 1993 WL 524757, at *4 (D.Md. Nov.19, 1993); *Harper v. Edgewood Bd. of Educ.*, 655 F.Supp. 1353, 1356 (S.D.Ohio 1987); *Monitor v. City of Chicago*, 653 F.Supp. 1294, 1300 (N.D.Ill.1987).

must show that Defendant's conduct was arbitrary, discriminatory, or in bad faith. *Civil Serv. Bar Ass'n, Local 237 v. City of New York,* 64 N.Y.2d 188, 192, 474 N.E.2d 587, 588, 485 N.Y.S.2d 227, 228 (N.Y.1984). In the present case, Plaintiff alleges that Defendant's conduct was arbitrary. Thus, Plaintiff must demonstrate that Defendant's conduct was so unreasonable that it may only be characterized as wholly irrational. *Marquez v. Screen Actors Guild, Inc.,* 525 U.S. 33, 45, 119 S.Ct. 292, 142 L.Ed.2d 242 (1998) (construing analogous provision of the National Labor Relations Act, as amended, 29 U.S.C. § 159(a)) (citations omitted).

As an initial matter, Defendant argues that the claims are untimely. Indeed, a claim alleging that a union has breached its duty of fair representation must be brought within four months "of the date the employee or former employee knew or should have known that the breach has occurred, or within four months of the date the employee or former employee suffers actual harm, whichever is later." N.Y.C.P.L.R. § 217(2)(a). In the present case, it appears that Plaintiff's argument that Defendant breached this duty is based upon Defendant's handling of seven grievances and one Notice of Discipline. The Court addresses each of these in turn.

 With regard to grievances C97–0582 and C97–0882, the record shows that these grievances proceeded to arbitration and were rejected in a decision dated February 2, 1998. By letter dated February 4, 1998, Defendant informed Plaintiff of the Arbitrator's decision and advised him that it was closing the file on these two grievances. Thus, as of early February 1998, Plaintiff knew or should have known of any breach of Defendant's duty of fair representation with regard to these two grievances. Plaintiff did not file his complaint, however, until August 27, 1999. Because more than four months elapsed before Plaintiff filed his complaint, any claim that Defendant breached its duty with regard to these two grievances is time-barred by the provisions of § 217(2)(a).

 Similarly, Defendant pursued its challenge of Plaintiff's Notice of Discipline through arbitration. In an opinion dated November 3, 1998, however, the Arbitrator found that discipline was appropriate. As with grievances C97–0582 and C97–0882, any deficiencies in Defendant's representation should have been known to Plaintiff as of the date that he received notice of the Arbitrator's decision. Because more than four months elapsed before Plaintiff filed his complaint, his claim that Defendant breached its duty with regard to this Notice of Discipline is also time-barred by the provisions of § 217(2)(a).

 With regard to grievance C98–001, the record demonstrates that this grievance was denied at Step 1 of the decision-making process and that, on May 27, 1998, Defendant requested that the grievance proceed to Step 2. The record does not contain any further documentation. Construing the facts in the light most favorable to Plaintiff, the Court assumes for purposes of this Motion that this grievance was still pending when Defendant was decertified as the collective bargaining agent for Plaintiff's unit in May 1999. Because Plaintiff filed his complaint less than four months later, he is not barred from arguing that Defendant breached its duty of fair representation with regard to this grievance.

Similarly, with regard to grievance C98–1038, the record demonstrates that this grievance was denied at Steps 1 and 2 of the decision-making process. The record further indicates that, on September 1, 1998, Defendant requested that the grievance proceed to Step 3. The record does not contain any further documentation. The Court again assumes, for purposes of this Motion, that this grievance was still pending when Defendant was decertified in May 1999. Because Plaintiff's complaint was filed less than four months later, Plaintiff is not barred from arguing

that Defendant breached its duty of fair representation with regard to this grievance.

With regard to grievance C99–302, Defendant avers that Plaintiff was notified on May 13, 1999 that this grievance was denied at Step 3 of the decision-making process. Plaintiff, by contrast, avers that he never received such notification and that he lost the opportunity to demand that the grievance proceed to arbitration. Whether or not Plaintiff actually received the notification, however, is irrelevant: under either scenario, the complaint, which was filed less than four months later, was timely. Accordingly, Plaintiff is not barred from arguing that Defendant breached its duty of fair representation with regard to this grievance.

Finally, with regard to grievances C97–583 and C98–797, the record demonstrates that both of these grievances proceeded through Step 3 of the decision-making process. Further, Defendant states that it decided to defer arbitration on these two grievances and that the deferments were still pending when it was decertified in May 1999. Again, because Plaintiff filed his complaint less than four months later, he is not barred from arguing that Defendant breached its duty of fair representation with regard to these two grievances.

■■■■ Turning to the merits of Plaintiff's claims, Defendant argues that Plaintiff cannot establish that its conduct was arbitrary, discriminatory, or motivated by bad faith. As Defendant correctly notes, a union has discretion with respect to processing grievances and is not required to pursue every grievance to the highest level. *Kleinmann v. Bach*, 195 A.D.2d 736, 738, 600 N.Y.S.2d 327, 329 (3rd Dep't 1993); *Mellon v. Benker*, 186 A.D.2d 1020, 1021, 588 N.Y.S.2d 482, 483 (4th Dep't 1992). Moreover, even irresponsible or grossly negligent conduct may not form the basis of a plaintiff's fair representation claim. *Civil Serv. Employees Ass'n, Inc. v. Public Employment Relations Bd.*, 132 A.D.2d 430, 432, 522 N.Y.S.2d 709, 711 (3rd Dep't 1987), *aff'd*, 73 N.Y.2d 796, 533

N.E.2d 1051, 537 N.Y.S.2d 22 (N.Y.1988). On the other hand, the discretion to which a labor union is entitled must be rationally based, and the union may not arbitrarily ignore a meritorious grievance or pursue it in a perfunctory manner. *Smith v. ITT Standard*, 834 F.Supp. 612, 617 (W.D.N.Y. 1993) (construing analogous portion of the Labor Management Relations Act, 29 U.S.C. § 185(a)); *Vaca v. Sipes*, 386 U.S. 171, 191, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967) (construing analogous portion of the National Labor Relations Act, as amended, 29 U.S.C. § 158(b)).

■■■■ In the present case, Plaintiff alleges that he was required to draft all of his own grievances and conduct all of his own research. Once his grievances had been filed, Plaintiff had to plead with Defendant to pursue the grievances on his behalf. Finally, the files that Defendant maintained on Plaintiff's grievances were disorganized and incomplete. Plaintiff states that Defendant did not treat other DOCS employees in a similar manner, and Defendant has not set forth any evidence to explain the reason for its disparate treatment of Plaintiff. In light of the fact that this issue comes before the Court on Defendant's Motion and prior to any discovery in the case, the Court finds that Plaintiff has set forth sufficient facts to demonstrate that Defendant's conduct was wholly irrational and arbitrary. Because Plaintiff thus sets forth a prima facie case that Defendant breached its duty of fair representation with regard to those grievances that are not time-barred, the Court accordingly denies Defendant's Motion with respect to grievances C98–001, C98–1038, C99–302, C97–583, and C98–797.

### IV. *Conclusion*

For the reasons set forth above, it is hereby

ORDERED that Defendant's Motion is GRANTED with respect to Plaintiff's claims of sexual discrimination under Title VII and the HRL; and

FURTHER ORDERED that Defendant's Motion is GRANTED with respect to Plaintiff's conspiracy to discriminate claim; and

FURTHER ORDERED that Defendant's Motion is GRANTED with respect to Plaintiff's breach of duty of fair representation claim regarding grievances C97–0582 and C97–0882, as well as the Notice of Decision; and

FURTHER ORDERED that Defendant's Motion is in all other respects DENIED.